1

Exhibit F6

# IN THE UNTITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION

| | | |
|---|---|---|
| Severe Records, Chris Sevier Esq. | ) | **CASE NO:** |
| | ) | |
| **Plaintiff** | ) | |
| | ) | **JURY DEMAND** |
| **v.** | ) | |

Nancy Jones, Krisann Hodges, Bill
~~Ramsey, Cyndi McKenzie, Anton~~
Jackson, Rosemary Sexton, Marc
Oswald, Antonette Welch

**Defendants**

## COMPLAINT

Now Comes Mr. Sevier pursuant to the Tennessee Rules of Civil Procedure and the

Tennessee Constitution and United States Constitution under the 1st, 5th, 9th, 14th,

Amendment for a complaint for damages. These wrongs arose against Mr. Sevier and

Severe Records due to the concerted efforts of Mr. Rich, ADA Jackson, ADA Welch,

ADA Sexton, Mr. Ramsey, Mrs, McKenzie, Mrs. Jones, and Mrs. Hodges, who acted

maliciously for one another's benefit at the expense of justice.  For the record at the

outset, Mr. Sevier would like to establish that instead of litigating this case, he would

prefer to focus on his rock band "American Propaganda;" likewise, Severe Records

would prefer to continue to work towards developing into a record label that someday

rivals Sub Pop Records/Fueled By Ramen/Drive Thru instead of exposing rot in the

justice system. Preliminary, it would be a gross mischaracterization for Mr. Sevier or

Severe Records to suggest that any of the alleged wrongdoers were not typically moral

individuals of good character, who serve the community well.   However, in this case,

their actions have been dishonest, injurious, and verifiably unethical. They have ignored

3

9.  The Board of Professional Responsbility is a Tennessee state actor located in Davidson County.

10.  Neal & Harwell is a PLLC domiciled in Tennessee, operating out of Davidson County.

JURISDICTION AND VENUE

11. Mr. Sevier and Severe Records refers to and incorporates by reference paragraphs 1 through 11, as though fully set forth herein. This Court has Federal Question Jurisdiction under 28 U.S.C.A. § 1331. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 513, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).

12.  This counter complaint is plead in light of the standard established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

13.  This action arises under the First and Fourteenth Amendments to the United States Constitution, and under federal law, particularly 42 U.S.C. §1983.

14.  This Court has jurisdiction of this action under 28 U.S.C. §1331, 2201, and 2202.

15.  This Court is authorized to grant Mr. Sevier and Severe Records prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

16.  This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure, and to issue the preliminary and permanent injunctive relief requested under Rule 65 of the Federal Rules of Civil Procedure.

17.  Venue is proper under 28 U.S.C. §1391 (b). Each and all of the acts alleged herein were done by the Counter Defendants within this judicial district, specifically Davidson County, and under the color and pretense of the statutes, ordinances, regulations, customs, and uses.

the law and facts and effectively reduced the justice system to a place of favoritism and politics, acting as bullies. They have categorically misused the powers of their office for unjustifiable ends. Their misconduct has violated countless constitutional rights afforded to Mr. Sevier and Sevier Records, constituting a great disservice to the state of Tennessee and the public in general, since they have been entrusted with so much authority.

Meanwhile, truth and justice has been pushed to the wayside as a casualty of their campaign to abuse process in proceedings that were designed for ulterior ends than that were never intended by the Tennessee Supreme Court and United States Congress. Mr. Sevier is a proponent of a legal system based on truth, merits, and the law, these individuals, at least in this case, have used the justice system as a place to push improper agendas.

1. Marc Oswald is an adult resident citizen of Davidson County, Tennessee; Mr. Oswald manages Mr. Rich who is a counter defendant in other matter involving the same facts, which should be consolidated with this action in the interest of justice and judicial economy.

2. Cyndi McKenzie is an adult resident citizen of Davidson County, Tennessee.

3. Bill Ramsey is an adult resident citizen of Davidson County, Tennessee.

4. Nancy Jones is an adult resident citizen of Davidson County, Tennessee.

5. Anton Jackson is an adult resident citizen of Davidson County, Tennessee.

6. Antonette Welch is an adult resident citizen of Davidson County, Tennessee.

7. Krisann Hodges is an adult resident citizen of Davidson County, Tennessee.

8. Helen Rogers is an adult resident citizen of Davidson County, Tennessee.

4

18. Venue is proper here because all of the events took place in Davidson County.

FACTS

19. Mr. Sevier and Severe Records refers to and incorporates by reference paragraphs 1 through 18, as though fully set forth herein. In July 2008, Severe Records LLC and Chris Sevier filed a copyright lawsuit against Rich, Mafia, Crooks for a Federal Declaratory Judgment pursuant to the copyright act for a case of noninfringment in the face of repeated threats to sue Mr. Sevier and Severe Records for their exploitation of several copyrights. 17 U.S.C §§ 101 et. seq; 28 U.S.C. § 2201; (See Exhibit 3).

20. The case against Rich, Mafia, and Crooks was also for copyright misrepresentation after they repeatedly contacted digital service providers, such as itunes, and falsely alleged that the works in dispute were unauthorized.

21. The case against Rich, Mafia, Crooks was also for defamation concerning the publications that they issued in retaliation to Severe Records' refusal to placate their improper and self serving demands by no longer exploiting content that they possessed ownership rights in.

22. Additionally, the case involved a novel claim of copyright infringement in kind regarding the exclusive right of replication and distribution that was pled in the alternative to tortuous interference, if the Court found that preemption applied. Severe Records alleged that although there was no unauthorized copying, Mr. Rich and his mafia prevented Severe Records from making copies which infringed on their exclusive right of distribution and replication. Under a plain reading of the Copyright Act, Severe Records asserted that Rich, Mafia, and Crooks actions constituted infringement. Cyndi McKenzie and Bill Ramsey appeared as the attorney's of record on the case on behalf of Mr. Rich.

23. Mr. Rich employed them to win at all cost. Mr. Ramsey and Mrs. McKenzie promised results that were unobtainable.

24. In October 2009, Mr. Rich got in two fights in two nights while in California.

25. Mr. Rich got in a fight with Chris Poggi, falsely making what he alleged was a "citizens arrest." (See Exhibit ).

26. Mr. Rich got into a fight with musician Jerry Montano. Mr. Rich bashed Mr. Montano's face in. (See Exhibit).

27. Mr. Montano filed a lawsuit against Mr. Rich for assault, in Superior Court in California. (See Exhibit).

28. On December 25, 2008, Mr. Sevier filed an amended complaint in District Court.

29. An affidavit of Timothy C. Smith was filed in support of allegations alleged in the complaint. (See Exhibit).

30. Mr. Smith is a former member of Mr. Rich's Muzik Mafia.

31. Mr. Rich is a God Father in the Muzik Mafia.

32. Mr. Smith's testimony in the affidavit was adverse to Mr. Rich's legal interest. (See Exhibit).

33. After receiving Mr. Smith's affidavit, Mr. Rich and Mrs. McKenzie knew that Mr. Smith would provide adverse testimony against Mr. Rich at trial.

34. In January 2009, Mr. Rich called Mr. Smith and threatened to harm him if he provided any more testimony against Mr. Rich in the Federal Case. (See Exhibit 1). Mr. Rich's intent was to intimidate Mr. Smith into not testifying.

35. Mr. Rich's brother Isaac Rich also called and texted Mr. Smith threatening to physically attack him if he testified any more against his brother. (See Exhibit 1).

36. Mr. Smith reported Mr. Rich and his brother's to the police in February 2009 for making terrorist threats, witness intimidation, and obstruction of justice. (See Exhibit 2).

37. Mr. Sevier became concerned about Mr. Smith and his other artist's safety after observing the threatening text messages Mr. Rich sent to Mr. Smith.

38. Before March 13, 2009, Mr. Sevier had only had one conversation with Mr. Ashley.

39. This conversation took place months possibly years before March 13, 2009.

40. The subject matter of Mr. Sevier and Mr. Ashley's conversation concerned Mr. Ashley coming to audition for Severe Records LLC.

41. Prior to March 2009 at Legend's, Mr. Rich got on stage with Mr. Ashley uninvited.

42. Mr. Rich placed his hands on Mr. Ashley's neck without permission.

43. Mr. Rich jerked Mr. Ashley back and forth, while making threatening statements.

44. This incident was videoed and placed on You Tube. (See Exhibit).

45. On March 12, 2009, Mr. Ashley went to Mr. Rich's club the Spot with Danny Basham, Lee Brice, and others pursuant to Mr. Rich's invitation.

46. Mr. Rich shook Mr. Ashley's hand as he entered.

47. Mr. Rich introduced Mr. Ashley to his wife as he entered his bar.

48. Mr. Rich permitted Mr. Ashley to stay at his bar.

49. During the night Mr. Rich became intoxicated, while drinking with Sebastian Bach.

50. Around 1 or 2AM March 13, 2009, Mr. Rich accosted Mr. Ashley in his bar.

51. Mr. Rich's bodyguard, Brandon Glasgow, aka "69" moved in between Mr. Rich and Mr. Ashley because Mr. Rich was demonstrating hostile intent.

52. Mr. Rich reached around Mr. Glasgow and struck Mr. Ashley in the lower left jaw.

53. Danny Basham had a clear view of the incident and observed Mr. Rich strike Mr. Ashley. (See Exhibit).

54. Other witnesses observed Mr. Rich strike Mr. Ashley.

55. Brandon Glasgow also observed Mr. Rich strike Mr. Ashley.

56. Mr. Glasgow escorted Mr. Ashley out of Mr. Rich's bar.

57. Mr. Glasgow is a paid employee of Mr. Rich.

58. On the morning of March 13, 2009 around 6AM, Mr. Rich and Sebastian Bach called Mr. Ashley and left a message on his voicemail.

59. Mr. Rich called Mr. Ashley to intimidate him into not reporting his attack on Mr. Ashley to the police.

60. In the voice mail, Mr. Rich made threats.

61. In the voice mail Mr. Rich stated: "I hope you show this up in court at some point because you will play this against my testimony…." (See Exhibit 7).

62. Mr. Rich stated: "Jared this is John Rich…one more time….lets put this in Court…we can play this right in the middle of everybody….brother…I'm gonna knock the shit outta you!"

63. This voicemail constituted a terroristic threat.

64. In the voicemail, Mr. Rich identified where Mr. Ashley lived, off of Thompson Lane, to place him in fear of physical attack.

65. Mr. Rich's intent was to intimidate Mr. Ashley into not reporting the incident at his bar to the police by threatening to come to his house and assault him further.

66. Mr. Ashley did feel threatened by Mr. Rich's statements.

67. Around noon, on March 13, 2009, Severe Records first learned about Mr. Rich's assault on Mr. Ashley while at a photoshoot at a bar on Second Avenue from a witness.

68. In the afternoon of March 13, 2009, Mr. Ashley texted John Rich about punching him the night before. Mr. Rich responded to the text messages.

69. Mr. Ashley, subsequently, called the police acting on his own.

70. Mr. Ashley reported the matter before Mr. Sevier or Severe Records contacted him.

71. On March 13, 2009, a police complaint was created that neither Mr. Sevier nor Severe Records LLC had anything to do with.

72. Upon information and belief, Mr. Rich has a long history of altercation with the Nashville Police Department.

73. Upon information and belief, Mr. Rich once spit on a police officer.

74. Upon information and belief, the police have been called to Mr. Rich's residence several times in the past seven years for his refusal to pay taxi drivers.

75. Upon information and belief, the Metro Police Department was perturbed at Mr. Rich's repeated criminal offenses without having any consequences imposed on him.

76. Neither Mr. Sevier nor Severe Records took any affirmative acts to have an investigative detective assigned to the case.

77. Officials at the Nashville Police Department assigned Detective Robert Anderson to investigate these matters.

78. In March 2009, Mr. Sevier nor Severe Records ever made any statements nor took any actions to compel Metro Police Department to assign Detective Anderson to the case.

79.  Mr. Ashley turned over a copy of the You Tube video regarding the incident at Legand's Corner and a copy of the voicemail to Detective Anderson for review as part of his investigation.

80.  On the evening of March 13, 2009, Mr. Sevier called Mr. Ashley to inquire into the events that happened the night before because he was concerned that Mr. Rich was violent and would make good on his threats that he had made to artist like Mr. Smith in January 2009.

81.  Mr. Ashley explained the basic facts. Mr. Sevier stated that he would consider representing him in a civil suit against Mr. Rich if there were not any conflicts and the evidence supported Mr. Ashley's position, after a comprehensive review of the evidence.

82.  On March 15, 2009, Mr. Ashley gave Mr. Sevier a copy of the you tube video and voicemail in support of his position.

83.  Mr. Sevier was trained by the United States Military as a prosecutor in 2008.

84.  Mr. Sevier listened to the voicemail and found probable cause to support the offense of harassment and terroristic threats.  Mr. Sevier found that a reasonable person could feel emotional distress from hearing this voicemail, especially if the assault had occurred as Mr. Ashley alleged.

85.  Mr. Sevier found that the voicemail corroborated Mr. Ashley's position that Mr. Rich had assaulted him at the Spot, hours earlier before leaving the threatening voicemail, which was apparently meant to deter him from reporting the matter to the police.

86.  Mr. Sevier believed that although Mr. Ashley was not necessarily intimidated by Mr. Bach's statements, he was sincerely concerned about Mr. Rich making good on his threats embodied in the voicemail. The fact that Mr. Rich had allegedly assaulted Mr.

Ashley hours before making the threatening phone call and Sebastian Bach had not was a distinction with a difference.

87. Mr. Sevier agreed to sign Mr. Ashley to Severe Records LLC and make him a corporate officer so that he could be covered under the restraining order that the LLC was going to seek against Mr. Rich for threatening Mr. Smith.

88. Mr. Sevier fully disclosed to Mr. Ashley that his employer had a Federal law suit against Mr. Rich and that if he was part of Severe Records he could possibly be protected from Mr. Rich coming to his house and assaulting him.

89. Mr. Sevier's intent was to prevent Mr. Rich from making good on his threat to come to Mr. Ashley' house and "knock the @#45 out of him."

90. Mr. Ashley understood and acknowledged this and asked to be part of Severe Records and to be covered under the injunction.

91. Mr. Sevier explained to Mr. Ashley that he could would possibly represent him in a civil case, if other attorneys agreed that there was not a conflict of interest.

92. On March 15, 2009, Mr. Sevier asked Mr. Ashley to write out what happened in his own words to form the basis of an affidavit.

93. On March 17, 2009, Mr. Ashley sent Mr. Sevier an email stating that he needed help writing his affidavit.

94. Mr. Sevier agreed help Mr. Ashley prepare his affidavit by asking him questions, after Mr. Ashley sent him his first draft that was exclusively composed on his own.

95. Around March 17, 2009, Mr. Sevier went to the Board of Professional Responsibility to fix an issue with the status of his license concerning a misunderstanding about military exempt status and benefits of to service members. See Exhibit Q pp. 5-6.

96. Around this time Mrs. McKenzie filed a motion to disqualify Mr. Sevier from representing the LLC in District Court that centered on the rules of professional responsibility, Mr. Sevier responded in opposition. Id. at 7 – 28.

97. This was the first time Mrs. McKenzie and Mr. Ramsey began attempting to use the Board of professional responsibility to undermine Mr. Sevier's litigation.

98. Their attempts violated Mr. Sevier's first amendment right under the Petition Clause of the Tennessee and United States Constitution.

99. On March 19, Mr. Ashley generated an affidavit base on his observations of relevant matters concerning him and Mr. Rich, which he emailed to Mr. Sevier on March 19, 2009.

100. Mr. Sevier took Mr. Ashley's statements and converted them into an affidavit for Mr. Ashley to review.

101. On March 21, 2009, Mr. Sevier converted Mr. Ashley's statements into an affidavit for his review to further establish and promote strict accuracy.

102. In the email Mr. Sevier stated: "here is a start. Not done with it yet."

103. The caption of the affidavit that Mr. Sevier emailed to Mr. Ashley on March 21, 2009 contained the following information: (1)"In the United States District Court for the Middle District of Tennessee; (2) Chris Sevier and Severe Records verses John Rich et al, Shanna Crooks, Muzik Mafia; and the docket number: 3:08-cv-654.

104. This information was included because at this time Mr. Sevier had only agreed to include Mr. Ashley in his request for a preliminary injunction in Severe Records case.

105. Mr. Ashley knew that his affidavit was meant to be used in the District Court case.

106. Mr. Ashley understood that this was the case and never objected to the affidavit being used in the District Court case at any point. In fact, this was what he wanted.

107. Mr. Ashley appreciated Mr. Sevier's willingness to possibly help him establish protection through a Federal Court to keep Mr. Rich away from him.

108. Around March 22, 2009, Mr. Sevier and Mr. Ashley met at the Tin Roof to review his affidavit. Mr. Sevier printed out a copy of the affidavit, which had the Federal Court's caption.

109. Mr. Ashley never objected to the affidavit being used in the Federal Court case.

110. Mr. Sevier's intent with meeting with Mr. Ashley at the Tin Roof was to ensure that the affidavit was strictly accurate and acceptable to Mr. Ashley

111. On March 23, 2009, Mr. Ashley signed a finalized copy of the affidavit after a complete review. Mr. Sevier scanned the affidavit and emailed it to Mr. Ashley.

112. Around March 23, 2009, Mr. Sevier filed a request for a preliminary injunction against Mr. Rich in District Court with supporting affidavits from Chance and Mr. Ashley to restrain him.

113. Mr. Ashley was never under the apprehension that the affidavit was being used for anything other than to support Mr. Sevier's request for a preliminary injunction in his Federal Court case.

114. Mr. Ashley never objected to his affidavit being used in the Federal Court case, nor did he ever think the affidavit was being generated for any other greater purpose.

115. On March 27, 2009, Mr. Sevier had an informal meeting with an unofficial supervising attorney, who was a family friend. The attorney was once hired by Mr. Sevier's father, who is the senior hiring partner at Maynard, Cooper, and Gale in

13

Birmingham. The purpose of the meeting was to (1) discuss the incomprehensibly inappropriate conduct of Mrs. McKenzie for her tortuous interferences that were embarrassing and to (2) discuss whether Mr. Sevier's representation of Mr. Ashley in a civil case for assault against Mr. Rich would be permissible in light of rule 1.7.

116. At the meeting, Mr. Sevier determined that his representation of Mr. Ashley would be valid under the Rules of Professional Responsibility.

117. The attorney informally suggested that Mr. Sevier should give Mrs. McKenzie a courtesy call, informing her that he would be representing Mr. Ashley in a civil suit against Mr. Rich.

118. On March 30, 2009, Mr. Sevier confirmed to Mr. Ashley that he would represent him in a lawsuit against Mr. Rich.

119. This would be Mr. Sevier's first case for a third party after becoming licensed that was nonmilitary and none pro se.

120. On March 30, 2009, Mr. Sevier informed Mrs. McKenzie that he intended to represent Mr. Ashley in a lawsuit against Mr. Rich for the multiple assaults and slander.

121. Mrs. McKenzie informed Mr. Sevier that she had employed a private investigator to look into these matters.

122. Mrs. McKenzie employed a private investigator to look into these matters because she knew there was enough evidence to establishing probable cause that a crime had been committed at the Spot.

123. Mr. Sevier continued to conducted his own investigation into these matters to make sure that their was sufficient probable cause to file a civil lawsuit against Mr. Rich.

124. In conducting his investigation, Mr. Sevier interviewed Mr. Basham, who was the designated driver that night.

125. Mr. Basham confirmed that he had a clear view of the incident and saw Mr. Rich give Mr. Glasgow a reach around as he hit Mr. Ashley in the face with a closed fist.

126. Mr. Basham memorialized his observations of the assault and battery in an affidavit on April 14, 2009 that was to be used in Federal and State Courts.

127. Mr. Sevier also interviewed Lee Brice, Mr. Miller, and Mr. Williams all of whom made statements that supported Mr. Ashley's that an assault had occurred.

128. On or around March 31, 2009, a radio station acquired copies of the affidavit, police report, and voicemail concerning the conflict between Mr. Ashley and Mr. Rich and contacted Mr. Ashley to confront him about the statements in it.

129. On April 6, 2009, Mr. Rich filed a frivolous lawsuit against Mr. Ashley for defamation for the statements made to the radio station. Mr. Rich's lawsuit, like this one violated the Anti-Slapp statutes and was classic abuse of process and malicious prosecution.

130. Mrs. McKenzie and Mr. Ramsey filed the lawsuit against Mr. Ashley despite the following factors. First, Mr. Ashley's statements to the radio station were "repeated" and "referred to" in his March 23, 2009 affidavit and in the March 13, 2009 police report that the radio station had in its possession at the time it called to confront Mr. Ashley. Accordingly, Mr. Ashley's statements had sufficient connection to current and prospective judicial proceedings to qualify them for protection under "the cloak of absolute judicial privilege" because the statements were not an "excessive publication" under the "overall circumstance" test. Second, Mr. Rich is a "public figure." Mr.

Ashley's statements related to a matter of "public controversy" surrounding Mr. Rich's

highly publicized history of violence.  Mr. Rich did not allege the requisite "actual

malice" with "convincing clarity" because the statements were identical to the ones in

Mr. Ashley's sworn affidavit. Third, Mr. Ashley's statements were mere "opinion"

protected under the First Amendment of the Tennessee Constitution that were based on

personal observation. As such, his opinion could not have possibly injured Mr. Rich's

reputation, business, and privacy rights. Forth, Mr. Rich is "libel proof," especially from

allegations of assault, considering (a) his well documented history of assault covered

extensively in the media in other preexisting cases, and (b) the fact that Mr. Rich was

under investigation for multiple crimes against Mr. Ashley.

On April 7, 2009, Mrs. McKenzie filed a vindictive reply brief on behalf of Mr. Rich to

disqualify Mr. Sevier from representing the LLC in District Court. Id.  38 – 75.

131. Mrs. McKenzie and Mr. Ramsey's questionable legal strategy was to have Mr.

Sevier disqualified from representing the LLC so that he would have to incur inflated

legal fees, like Mr. Rich.

132. Mrs. McKenzie's pleadings were rife with personal attacks against Mr. Sevier. (See

Exhibit).  In the brief, Mrs. McKenzie accused Mr. Sevier of practice law without a

license because he had switched his status from military exempt after following the

guidance of the Board of Professional Responsibility, who unintentionally misinterpreted

one of its own rules regarding benefits to service members and status.

133.  Mrs. McKenzie and Mr. Ramsey were abusing the Board of Professional

Responsibilities rules to gain an advantage in the lawsuit for the benefit of their client.

134. Mrs. McKenzie and Mr. Ramsey's intent was to violate the Mr. Sevier and Severe Records First Amendment right under the Petition Clause of the U.S. Constitution.

135. To combat the disqualification brief, Mr. Sevier interacted with Chief Disciplinary Counsel Nancy Jones at the Board, who clearly acted in good faith, but switched sides on the issue in such a manner that caused Mr. Sevier to question whether she was biased in favor of Mr. Ramsey, since the two were known to be close friends. Id. 29 – 37.

136. In April 2009, Mr. Sevier interviewed Mr. Rich's former body guard, Robert Smith, who confirmed that Mr. Rich had a one point reached around him and hit a third party at a bar.

137. Mr. Smith's attested to this incident in an affidavit.

138. Mr. Smith's statements further confirmed to Mr. Sevier that there was sufficient probable cause for him to file a civil lawsuit on behalf of Mr. Ashley against Mr. Rich for assault.

139. On May 1, 2009, Detective Anderson concluded his nearly two month long investigation having found sufficient probable cause to have three warrants issued for three independent violent crimes.

140. Detective Anderson relied on the videotape and voicemail in finding probable cause for two of the crimes.

141. Detective Anderson interviewed Mr. Glasgow twice, once in March and once in April, who admitted on both occasions that Mr. Rich had assaulted Mr. Ashley.

142. Detective Anderson interviewed Mr. Glasgow in March before he signed an affidavit in which he alleged that Mr. Rich never touched Mr. Ashley.

143. Mr. Glasgow's statements in his affidavit were false.

144. Detective Anderson interviewed Mr. Glasgow after he signed the affidavit allowing him the opportunity to retract his previous omission in March that Mr. Rich had struck Mr. Ashley. However, Mr. Glasgow did not retract this statement and confirmed that Mr. Rich had struck Mr. Ashley at the Spot.

145. Upon information and belief, Mr. Glasgow's statements, along with Mr. Ashley's, the video, and voicemail formed the basis for the state's decision to hold Mr. Rich criminally accountable.

146. On May 1, 2009, three warrants for the arrest of Mr. Rich were issued by Metro.

147. Neither Mr. Sevier nor Severe Records LLC had anything to do with the warrants or the criminal investigation or reporting the crimes. Mr. Sevier does admit that in April he recommended that Mr. Ashley forward the affidavits of Mr. Rich, Mr. Glasgow, Mr. Basham, and Robert Smith to the investigating Detective, since a criminal conviction could be used in the civil proceedings.

148. In fact, Mr. Sevier admits that on April 17, 2009, Mr. Sevier emailed Detective Anderson a copy of Robert Smith's affidavit in an email entitled: "Sent under the express authority of Mr. Jared Ashley." In the email, Mr. Sevier stated:

> "Mr. Ashley is currently out of state on his tour bus. He does not have internet access. Under his authorization, he asked me to forward you the Affidavit of John Rich's former body guard, Robert L. Smith, who has provided statements in an affidavit that are relevant to the instant inquiry regarding Mr. Ashley. The document is attached. Jared Ashley's email is attached so that he may confirm or deny this contention. All the Best, Chris Sevier Esq." (See Exhibit).

149. Detective Anderson did not respond to the email.

150. Other than that the above email, neither Mr. Sevier nor Severe Records had any interaction with the criminal case before the warrants issued.

151.  At the most, Mr. Sevier's interest in the criminal case was that a conviction could be admissible in the civil trial.

152.  Sometime around May 13, 2009, Mr. Sevier did meet with Detective Anderson to ask if he would provide information about his findings.  Detective Anderson was very polite and professional but was apprehensive about discussing the case with Mr. Sevier.

153.  On May 6, 2009, Mr. Sevier emailed Mrs. McKenzie a constructive promise to seek sanctions, if she did not strike Mr. Rich's complaint.

154.  On May 7, 2009, Mr. Sevier mailed Mrs. McKenzie a letter asking her to strike Mr. Rich's complaint or face sanctions.

155.  On or around May 22, 2009, Mrs. McKenzie, Mr. Ramsey, and Mr. Rich consistent with a pattern to act outside the bounds of the law, commissioned Marc Oswald, an influential music manager, to go to Mr. Ashley's private residence to intimidate him into settling the lawsuits between him and Mr. Rich.

156.  Their intent was to bribe Mr. Ashley

157.  Mr. Oswald approached Mr. Ashley about settling, not the other way around. Around 2PM, Mr. Ashley and Mr. Oswald had a conversation about the case that was surreptitiously taped because Mr. Ramsey, Mr. Rich, and Mrs. McKenzie were untrustworthy. Mr. Ramsey and Mrs. McKenzie were willing to win at all cost to keep Mr. Rich paying their legal fees.

158.  Mr. Rich, Mrs. McKenzie, Mr. Ramsey, and Mr. Oswald's intent was to commit additional crimes and to cover it up the earlier ones.  In the conversation, Mr. Oswald repeatedly confirmed that he had been commissioned by Mr. Ramsey and Mrs. McKenzie to talk to Mr. Ashley about Mr. Rich's case. On behalf Mr. Rich, Mr. Ramsey, and Mrs.

McKenzie, Mr. Oswald attempted to bribe Mr. Ashley with money and music opportunities in exchange for not prosecuting Mr. Rich or suing him in civil court. Mr. Ashley was not interested in accepting at that time.

159. Additionally, Mr. Oswald illegally used the powers of his position in the music industry to coerce Mr. Ashley into dropping the criminal charges against Mr. Rich.

160. Mr. Oswald's actions were highly inappropriate and constituted obstruction of justice.

161. Mr. Oswald is not an attorney.

162. Ashley rejected Mr. Oswald's offer to accept money to drop criminal charges.

163. Mr. Oswald, Mr. Rich, Mr. Ramsey, and Mrs. McKenzie were willing to pay Mr. Ashley more than just restitution. They wanted to pay him at least $25,000.

164. Mr. Sevier arrived thirty minutes into the meeting between Mr. Ashley and Mr. Oswald, after having just learned that Mr. Oswald had invited himself to Mr. Ashley's house only an hour earlier. Mr. Sevier believed that Mr. Oswald was, at best, there to resolve the civil claims between Mr. Rich and Mr. Ashley.

165. Mr. Ramsey and Mrs. McKenzie were Mr. Rich's civil attorneys.

166. At the close of the meeting, Mr. Sevier and Mr. Ashley made it clear that they were not interested in making any offers at that time.

167. Mr. Oswald asked that Mr. Sevier to consider making an offer by May 26, 2009.

168. Mr. Sevier stated that him and his client would consider making an offer but this only related to civil proceeding.

169. Mr. Sevier informed Mr. Oswald that he had no authority over the criminal case, as they were leaving.

170. This caused Mr. Oswald to contact Mr. Ashley again on May 23, 2009, looking to establish grounds to impeach Mr. Ashley and Mr. Sevier in the media so that Mr. Rich would look less like the criminal. This was a blame-shifting tactic.

171. Neither Mr. Ashley nor Mr. Sevier contacted Detective Anderson to call off the criminal case. Never at any point did they intend to do this as Mr. Oswald, Mrs. McKenzie, Mr. Ramsey, and Mr. Rich hoped.

172. On May 26, 2009, out of an abundance of caution, Mr. Sevier called Mr. Vick at the Board of Professional Responsibility to get guidance on how to respond in the event that Mr. Oswald made settling the civil cases contingent on resolving the state's criminal case.

173. Mr. Sevier followed Mr. Vick's guidance in conducting settlement discussions later that day, not commingling the state's case with the civil ones.

174. On May 26, 2009, Mr. Oswald repeatedly called Mr. Ashley to get an answer about settlement, which caused Mr. Ashley to feel pressure and anxiety.

175. In response Mr. Sevier called Mr. Oswald to get him to stop calling Mr. Ashley. Negotiations between Mr. Oswald and Mr. Sevier failed.

176. Mr. Oswald continued to harass Mr. Ashley about settling. Mr. Ashley felt intimidated.

177. Mr. Ashley was not interest in settling the states case, nor did have the authority to do so. Mr. Sevier had no authority over the criminal case, which Mrs. McKenzie, Mr. Ramsey, Mr. Rich, and Mr. Oswald knew or should have known. Mr. Ashley wanted his civil lawsuit to be filed before even considering settling so that his side of the story could be heard because the media had only portrayed Mr. Rich's side of the story.

178. As part of their spurious and malicious plan, on May 27, 2009, Mrs. McKenzie contacted ADA Sexton at district attorneys office and falsely accused Mr. Ashley and Mr. Sevier of extortion. Mrs. McKenzie falsely reported that they demanded money in exchange for the resolution of a criminal case, after she and Mr. Ramsey had illegally sent Mr. Oswald to Mr. Ashley's house to discuss settlement in extreme bad faith to intimidate him.

179. Mrs. McKenzie's corrupt intent was to have Mr. Sevier and Mr. Ashley maliciously prosecuted for crimes that were void of probable cause.

180. She knew that she was falsely accusing them of a crime as part of an unethical legal strategy invented by her and Mr. Ramsey to keep Mr. Rich from serving jail time.

181. Mrs. McKenzie knew that she was publishing false statements to a third party on behalf of Mr. Rich that were of and concerning Mr. Sevier and Mr. Ashley, even though their were existing and prospective lawsuits against Mr. Rich for defamation.

182. The compound dishonest conduct was a factor in aggravation against Mrs. McKenzie, Mr. Ramsey, and Mr. Rich that caused Mr. Sevier to decide to suit them.

183. Mrs. McKenzie did not investigate into the truthfulness of the allegations she made to ADA Sexton because she already knew they were false, as part of a fraudlent legal plan that she designed to impress Mr. Rich so that that he would continue to pay her fees.

184. It was Mrs. Mckenzie and Mr. Ramsey who had sent Mr. Oswald over to Mr. Ashley's house in the first place.

185. On the Morning of May 28, 2009, Mr. Sevier filed a motion to dismiss Mr. Rich's April 6, complaint against Mr. Ashley for allegedly making false statements to the media and a motion for sanctions against Mrs. McKenzie, Mr. Ramsey, and Mr. Rich.

186. ADA Sexton contacted Mr. Ashley to investigate into whether he and Mr. Sevier had offered money to drop the criminal charges, which Mr. Ashley denied, stating that he had authorized Mr. Sevier to conduct civil negotiations with Mr. Rich's authorized agent before filing his complaint, which was scheduled to be filed on May 29, 2009. ADA Sexton dismissed Mrs. McKenzie's false report as groundless. ADA Sexton believed that the false report was filed for ulterior purposes.

187. On the evening of May 28, 2009, Defendant Rich turned himself in to local authorities, which was of interest to the national media for several reasons. Mr. Rich was planning on running for Governor and had released a solo album, making him relevant to the media during this time. Mr. Rich was arrested for the same statements that he sued Mr. Ashley for, making him look ridiculous. The public viewed Mr. Rich's lawsuit as a frivolous preemptive strike to avoid liability.

188. To lessen the backlash across the national media, Mrs. McKenzie and Mr. Rich released a knowingly false statement, alleging that Mr. Ashley and Mr. Sevier demanded a ransom in exchange for dropping the criminal charges brought by the state.

189. An aggravating factor in publishing this false statement was that they both knew that Mr. Sevier had already sued Mr. Rich for libel in Federal Court for the false statements that were published by Rich, Mafia, and Crooks on July 11, 2007.

190. On May 29, 2009, may Mrs. McKenzie and Mr. Rich returned to the media to further clarify that they were accusing Mr. Ashley and Mr. Sevier of compounding a crime and extortion.

191. These spurious statements were maliciously published by Mrs. McKenzie and Mr. Rich with the total disregard of Mr. Sevier and Mr. Ashley's civil liberties.

192.  These false statements were republished hundreds of times on the internet and continue to be republished at the expense of Mr. Sevier and Mr. Ashley. The false statements had a substantially adverse impact on Mr. Sevier's ability to practice law at the beginning of his career, especially since they related to settlement.

193. To this day the libelous statements continue to interfered with his ability to conduct settlement negotiations in other cases, since they are fixed in internet websites on the world wide web and readily discoverable through internet search engines.

194.  These false statements were designed to undermine Mr. Sevier's valid libel claims against Rich, Mafia, and Crooks in his Federal Court and to pervert justice in Mr. Ashley's criminal and civil cases.

195. Mrs. McKenzie and Mr. Ramsey's false statements violated the rules of professional responsibility.

196. On May 29, 2009, Mr. Sevier reviewed the taped conversations between Mr. Ashley and Mr. Oswald to begin preparing a defamation lawsuit against Mr. Rich, Mr. Owsald, Mr. Ramsey, and Mrs. McKenzie.  In listening to the audio recordings regarding the private conversation of Mr. Ashley and Mr. Oswald, he discovered probable cause that all four of these individuals had conspired to commit attempted bribery, practicing law without a license, coercion of a witness, and obstruction of justice.

197.  In response, Mr. Sevier decided that he should contact the District Attorney's office for two reasons. First, he wanted deny Mrs. McKenzie's false allegations made on May 28, 2009.  Second, he felt called to report these individuals for the crimes they committed in an effort to cover up three earlier crimes.  Having been trained by the military as a Government prosecutor, these factors in aggravation needed to be reported.

198.  After all, there are countless indigent people in jail for substantially less serious crimes.

199.   On May 29, 2009, around 11:30 PM, Mr. Sevier called Metro Police department and reported all four suspects for these crimes for the concerted efforts. Id. at 79.

200. Officer Slusser responded to the call issued a police complaint because there was sufficient probable cause based on the evidence.

201.  The officer advised Mr. Sevier to met with the District Attorney's Office.

202.  Around May 30, 2009, Mr. Sevier contacted Mr. Ramsey, Mr. Oswald, and Mr. Ramsey and threatened to file a lawsuit if they did not retract their statements. Id 80 – 95.

203. Consistent with the pattern of acting outside the law to undermine justice, upon information and belief, from May 30, 2009 forward, Mrs. McKenzie and Mr. Ramsey began designing, yet again, another dishonest plan to misuse their connections at the Board of Professional Responsibility to escape accountability.

204.  On June 1, 2009, Mr. Sevier filed a  civil complaint on behalf of Mr. Ashley against Mr. Rich.

205.  On June 1, 2009, Mr. Sevier called ADA Sexton to report Mrs. McKenzie, Mr. Ramsey, Mr. Oswald, and Mr. Rich's crimes because Mr. Sevier wanted to deny Mrs. McKenzie's false report on March 28, 2009.

206.  Mr. Sevier also elected to call ADA Sexton because she is the Aunt of Dawn Martin, who had provided an affidavit in his District Court Case in which she attested to Mr. Rich misappropriating her copyright in her song "Redneck Country Girls" that Mr. Rich wrongfully converted into "Redneck Woman."

207. This was the first time that Mr. Sevier talked to someone at the District Attorney's office about crimes committed against Mr. Ashley involving Mr. Rich.

208. Mr. Rich's allegation in his November 19, 2010 complaint that Mr. Sevier and Mr. Ashley were shopping for district attorney's to take the assault and harassment charges that Mr. Ashley reported on March 13 was false.

209. Mr. Sevier asked ADA Sexton if he could bring her evidence of new criminal conduct that was purposed to cover up existing crimes that Mr. Rich had been charged with. (See Exhibit Q Aff. of Sexton at 497 and 489).

210. ADA Sexton advised Mr. Sevier that the proper procedure was for him to take the matter to the in take office the next day and speak to the ADA on call. Id.

211. On the morning of June 2, 2009, Mr. Sevier, Shella Harrison, and Mr. Ashley met with Assistant District Anton Jackson and another ADA at the in take office regarding the actions of Mr. Rich, Mr. Ramsey, Mrs. McKenzie, and Mr. Oswald.

212. At the meeting, Mr. Jackson only had 30 minutes to meet. Mr. Sevier explained the underlying facts to him and was prepared to play the tape recordings of the events at that time. ADA Jackson acknowledged that crimes had possibly occurred.

213. ADA Jackson stated that he would continue to look into the matters and asked that Mr. Sevier bring him copies of the tape recordings.

214. ADA Jackson never mentioned that the actions of the suspects did not rise to the level of a crime.

215. He never said that Mr. Owald was acting as a mediator.

216. He never stated that Mr. Oswald's actions were permissible even though he is not an attorney.

217. The word "mediator" was never mentioned.

218. ADA Jackson did not given any indication whatsoever that he would not continue to investigate into the matter.

219. ADA Jackson gave Mr. Sevier a copy of his business card.

220. ADA Jackson's intent in giving Mr. Sevier a copy of his business card was so that Mr. Sevier could know where his offices were located so that he could deliver copies of the tapes for ADA Jackson to continue to the states investigation.

221. Mr. Sevier left the meeting with the sincere belief that the four suspects were under investigation by the state, having acquired a police complaint number and based on ADA Jackson's actions.

222. Upon information and belief, ADA Jackson had never dealt with kinds of fact and the types of crimes alleged.

223. As a prosecutor for the military where investigations are mandatory without exception, Mr. Sevier believed that the state had to investigate matters like these given the allegations and evidence presented or its agents could be disciplined for nonresponsiveness. (See Exhibit).

224. Mr. Sevier believed that ADA Jackson was under similar prosecutorial standards, having no reason to believe otherwise, since they are both state actors. Mr. Sevier provided more than enough probable cause for an investigation to go forward and for the suspects to be charged and arrested regardless of who they were.

225. Mr. Sevier left the meeting with ADA Jackson with the understanding that the next step in the investigation was for him to deliver audiotapes to ADA Jackson.

226. ADA Sexton was never present at the meeting on June 2, 2009.

227. In the afternoon, of June 2, 2009, Mr. Sevier met with Mr. Vick at the Board to make a determination whether his obligation to report Mr. Ramsey and Mrs. McKenzie for several violations of the rules of ethics had been triggered. Mr. Sevier did not necessarily desire to blow the whistle on fellow attorney's but he knew that he had a mandatory obligation to report misconduct or he could be subject to discipline. The fact that these matters were so public made it virtually impossible for him to turn a blind eye.

228. In the halfway at the Board, Mr. Sevier had an encounter with Mrs. Jones that made him suspect that she was biased in favor of Mr. Ramsey because she acted suspiciously. As the Chief Disciplinarian of an ethical commission of the state of Tennessee, he hoped she would have the honor and integrity not to play favorites.

229. On June 4, 2009, some attorneys at a party for the Tennessee Volunteer lawyers for the Arts stated that they were going to no longer associate with Mr. Sevier because of the false statements that Mr. Rich and Mrs. McKenzie made to the media. This caused Mr. Sevier's wife to experience stress. On June 5, 2009, at 1AM, Mr. Sevier emailed Mr. Ramsey and Mrs. McKenzie that the stress of their defamatory statements had really upset his wife. Id. at 96.

230. Around noon on June 5, 2009, Mr. Sevier's wife had a miscarriage. Upon information and belief, there was some correlation between the spurious statements in the media and the loss. The email and miscarriage were not coincidental. On June 6, 2009, at 4:14 AM, Mr. Sevier emailed Mr. Ramsey and Mrs. McKenzie that the preponderance of the evidence suggested that their intentional misconduct was a contributing factor. Id. at 97.

231. Not only was there no remorse, Mrs. McKenzie attempted to use these events to gain an advantage in Mr. Rich's frivolous case against Mr. Timothy Smith before the eighth circuit in her motion for disqualification as part of a pattern of malicious conduct. Showing the empathy of a scorpion.

232. On June 8, 2009, Mr. Sevier emailed ADA Jackson that he was working on getting the tapes together to send him as he had requested so that the state could continue to investigate. Id. at 98.

233. On June 14, 2009, Mr. Sevier privately asked Mrs. McKenzie and Mr. Ramsey to disqualify themselves from representing Mr. Rich in the Ashley cases so that he would not have to be like them and file an embarrassing motion to disqualify. Id. at 99.

234. At some point during the week of June 15, 2009, Mr. Sevier learned that ADA Welch had been assigned to try Mr. Ashley's case against Mr. Rich.

235. Mr. Sevier thought it would be appropriate for ADA Welch to know that Mr. Rich and his agents had attempted to cover up the crimes she was assigned to prosecute. ADA Welch recommended that Mr. Sevier bring those new charges to the in take office. See Exhibit Q at 498. Mr. Sevier confirmed that he had met with ADA Jackson who was looking into it.

236. On June 16, 2009, Mr. Sevier filed the motion to disqualify Mr. Ramsey and Mrs. McKenzie, supported by a 43 page memorandum that accused them of a myriad of ethical violations that was supported by direct evidence of their wrongdoing. Id. 100 –140. On page 29 of the memoradum in support of the motion, Mr. Sevier stated: "Moreover, Mrs. [McKenzie], Mr. Ramsey, Mr. Rich, and Mr. Oswald are under

investigation for the crimes that they allegedly committed during the course of their conspiracy." Id. at 128

237. This statement was immaterial to the outcome of the motion and Mr. Sevier lacked any motive to falsely plead this assertion, which the Defendants here are well aware of. Mr. Sevier sincerely believed that the suspects were under investigation when he made this statement based on his observations at the meeting on June 2, 2009 with ADA Jackson and officer Sussler on May 29, 2009.

238. After filing the motion to disqualify, Mr. Sevier dropped off copies of the incriminating audiotapes to ADA Jackson so that the state's investigation could continue. Id. at 498 and 499. Mr. Sevier also dropped off a copy of his motion to disqualify so that ADA Jackson could have some additional context when analyzing the statements in the audiotape. Mr. Sevier informed ADA Jackson that he would get all the facts sent to him in a complaint to help him investigate further.

239. At no time did ADA Jackson ever indicate that he was not looking into the matters.

240. On June 23, 2009, as promised, Mr. Sevier emailed ADA Jackson a copy of the facts to help him with his investigation. Mr. Sevier gave ADA Jackson his opinion that it was a factor in aggravation that the suspects were committing crimes to cover up other ones in a case that the public was closely watching and that justice needed to be done to send the message to the community that nobody is above the law, including rich celebrities and candidates for governor. Id. at 144.

241. Upon information and belief, on June 23, 2009, the District Attorney's Office and Neal & Harwell, i.e. ADA Sexton and Mr. Ramsey, maliciously conspired to develop

knowingly false ground so that Mr. Ramsey and Mrs. McKenzie could falsely accuse Mr.

Sevier of making a false statement in his memorandum.

242. Mr. Ramsey and Mrs. McKenzie's intent was to misuse Mr. Ramsey's friend, Mrs.

Jones at the Board, as reprisal for his reporting to the police and Board.

243. Just like the April 6, 2009 frivolous complaint against Mr. Ashley, this was an

inappropriate first strike legal tactic designed to obstruct justice. ADA Sexton and Mr.

Ramsey knew that Board action could be used to prejudice Mr. Sevier in his existing civil

litigation that was part of the public record. They were aware that false board action

could be used to prejudice Mr. Sevier in future civil proceedings.

244. Mr. Ramsey and Mrs. Jones have known each other personally for years.

245. Upon information and belief, they are members of the same legal societies and have

served on the same committees together.

246. Because of their long standing relationship, Mr. Ramsey knew that Mrs. Jones

would misuse the her office for his benefit.

247. Upon information and belief, ADA Sexton pressured ADA Jackson to send Mr.

Sevier an email that intentionally misrepresented the events of June 2, 2009 at the

original meeting so that Mr. Ramsey would have a basis for falsely accusing Mr. Sevier

of wrongdoing in Court three days later to trigger a board investigation.

248. Upon information belief, ADA Jackson went along with this not knowing Mr.

Ramsey and ADA Sexton's ultimate intent. However, ADA Jackson knew this position

was dishonest and supported it anyway.

249. On June 23, 2009, Mr. Jackson emailed Mr. Sevier:

> "Good afternoon. Originally, we met on June 2, 2009 to discuss complaint
> number 09-425624. On that date, I explained the situation did not appear to rise

to the level of a crime. As you requested, I listened to the recordings you provided. However, my findings have not changed; this is not a situation that is appropriate for prosecution." Id. at 150.

250. ADA Jackson's email gave Mr. Sevier concern. Mr. Sevier was perplexed by this email because it mischaracterized the events of June 2, 2009. Mr. Sevier responded to ADA Jackson's email: "Anton, what in the world?" Id.

251. It was one thing that ADA Jackson did not want to prosecute the alleged suspects. Mr. Sevier is a proponent of mercy. However, it was another thing for him to knowingly misrepresent the truth about what happened at the meeting. At no point on June 2 had ADA Jackson "explained" that the "situation did not appear to rise to the level of a crime." At first, as a prosecutor himself, Mr. Sevier thought ADA Jackson's mischaracterization was merely technical mistake and was not part of an elaborate dishonest plan designed for the benefit of Mr. Ramsey, Mr. Rich, and Mrs. McKenzie.

252. On June 26, 2009, at a hearing before the Fifth Circuit on a motion to dismiss Mr. Rich's April 6 complaint, Mr. Ramsey brought up the motion to disqualify that was not even before the court. Mr. Ramsey alleged that Mr. Sevier had made a knowingly false statement on page 29 of his memorandum in support of his motion to disqualify, when he alleged that Mr. Ramsey, Mrs. McKenzie, Mr. Oswald, and Mr. Rich were under investigation. Mr. Ramsey falsely asserted that Mr. Sevier knew that they were not under investigation at the time the statement was published on June 16, 2009. Mr. Ramsey's intent was to compel Judge Binkley to order an investigation by the Board.

253. Judge Binkley responded by taking note of Mr. Ramsey's accusations against Mr. Sevier. Judge Binkley then understandably prompted the Board to inquire into whether

Mr. Sevier had a justifiable basis for making the statement in his memorandum to the motion to disqualify that Mr. Ramsey demanded was known to be false.

254. On July 1, 2009, ADA Sexton was subpoenaed to come to Neal and Harwell to fill out an Affidavit. Mr. Sevier did not receive notice of the deposition until after the meeting, so he was not able to confront ADA Sexton. This was all part of a malicious pattern.

255. In paragraph 5 of ADA Sexton's affidavit she falsely alleged:

> On June 5, Mr. Sevier and Jared Ashley and an unknown woman met with ADA Jackson at the warrant screening office. ADA Jackson explained that Mr. Sevier' allegations, concerning the above individuals, of conspiracy to facilitate the unauthorized practice of law and obstruction of justice, [attempted bribery], etc., did not rise to the level of a criminal offense. Further, A.D.A Jackson advised Mr. Sevier that the actions of Mr. Oswald could be construed as being no different that a mediation attempt. As the woman placed a tape record on the table, it appears that the discussion was taped. I concurred in A.D.A Jackson's decision and requested that he keep me informed.

256. ADA Sexton's testimony was based on hearsay and full of patently false statements. It was unethical for her to attest to events of a meeting that she was not present for.

257. ADA Sexton knew this to be the case but her intent was to help her friends, Mr. Ramsey and Mrs. McKenzie, act in reprisal for Mr. Sevier's reporting. Whereas, Mr. Sevier is a new lawyer, these people have been practicing law together for years.

258. ADA Sexton improperly attested to events of a meeting that she was not present for.

259. Upon information and belief, ADA Sexton has had a long term relationship with Mr. Ramsey and attorneys at Neal and Harwell. She was looking out for their interest at the expense of justice and her duties as a prosecutor for the people of Tennessee pursuant to quid pro quo.

260. Unlike ADA Sexton alleged, ADA Jackson never mentioned that Mr. Oswald was merely acting as a neutral mediator on May 22, 2009.

261. Mr. Sevier did bring a tape recorder to the meeting on June 2 for the exclusive purpose of playing ADA Jackson the conversation between Mr. Ashley and Mr. Oswald, which contained conclusive proof of criminal conduct.

262. ADA Sexton's testimony that the conversation between ADA Jackson and Mr. Sevier, Mr. Ashley, and Mrs. Harris was taped was false.

263. At that point, Mr. Sevier had no reason to suspect that it was necessary to tape a fellow prosecutor's statements or that ADA Jackson and ADA Sexton to join were dishonest and more interest in playing favorites than promoting truth and justice.

264. On July 14, 2009, Mr. Sevier received an ethical inquiry from Nancy Jones at the Board:

> In the case of John Rich v. Jared Ashley, Case No 09C-1143, Circuit Court, Davidson County, you filed a memorandum in Support of Motion to Disqualify on June 16, 2009. In this memorandum at page 29, you state: 'Moreover, Mrs. [McKenzie], Mr. Ramsey, Mr. Rich, and Mr. Oswald are under investigation for the crimes that they allegedly committed during the course of their conspiracy. Within 10 days, please provide us in writing the factual basis for this statement.'" Id. at 153 – 156.

265. Of all the personnel at the Board, it was not by coincidence that Mrs. Jones sent the inquiry. Mrs. Jones was biased in favor of her friend Mr. Ramsey and was set on intentionally misusing her office as reprisal to punish Mr. Sevier. Id. 413 – 414.

266. Upon information and belief, Mrs. Jones had already decided to use misuse the powers of her office to oppress and bully Mr. Sevier attempting to hold her friend, Mr. Ramsey, and his underling, Mrs. McKenzie for their wrongdoing in multiple venues.

267. Mrs. Jones conspired with Mr. Ramsey and Mrs. McKenzie knowing that their collective efforts were immoral.

268. Mrs. Jones sent the letter that was of and concerning Mrs. McKenzie and Mr. Ramsey knowing full well that Mr. Sevier was in the process of filing an ethics complaint against them, after his meeting with Mr. Vick on June 2, 2009.

269. Upon information and belief, Mr. Ramsey had private conversations with Mrs. Jones where he informed her about Mr. Sevier's threats to sue him, Mrs. McKenzie, and Mr. Rich for making statements to the media. Mrs. Jones agreed to misuse her position with the state to stop this from happening despite the merits of the prospective civil case.

270. Mrs. Jones knew or should have known given the subject matter that her inquiry was likely a violation of the Tennessee Anti-Slapp statute because it dealt with reporting crimes to the police and police investigation.

271. Mr. Sevier received this inquiry from the board and assumed that they had launched an investigation, since the District Attorney's office and Mr. Ramsey had obviously worked out a plan to use the Board, as evident in ADA Jackson's June 23, 2009 email, ADA Sexton's affidavit, and Mr. Ramsey's false statement in court on June 26, 2009.

272. On July 18, 2009, Mr. Sevier emailed Mrs. Jones that he had received her inquiry and that he was working on his complaint against Mr. Ramsey and Mrs. McKenzie, as a way of implying that they were using her as reprisal for the inevitable complaint against them in the unlikely event she was fair minded and not biased.

273. Feeling ganged up on and distress over this collective abuse of the justice system, Mr. Sevier filed a lengthy response to the inquiry with the Board, defending his sincere

belief that the suspects were in fact under investigation by the state at the time when he wrote and filed his motion to disqualify on June 16. Id. 162 – 200.

274. Mr. Sevier unapologetically admits that he had not had any experience with this kind of thing before, which was something that ADA Jackson, ADA Sexton, Mrs. Jones, Mr. Ramsey, and Mrs. McKenzie were using to their advantage.

275. As an additional protective measure, Mr. Sevier filed his response to the Board's inquiry with the court as an exhibit to a motion to alert Judge Binkley that Mr. Ramsey and Mrs. McKenzie were improperly attempting to use misuse the Board to interfere with the case at bar. Id. at 160 – 200.

276. At the time, Mr. Sevier assumed that Judge Binkley was impartial and that he would not enable this kind of nonsense in his Honorable Courtroom. Mr. Sevier was not aware that it was Judge Binkley, who had initiated the Board's inquiry, as a result of Mr. Ramsey's superceding false accusations. Judge Binkley was poised to enable more of it.

277. Mrs. Jones was livid that Mr. Sevier filed his response in court because it basically embarrassed all of them, and tended to raise serious questions of ADA Jackson, Mr. Ramsey, and Mrs. McKenzie integrity. Mr. Sevier's response suggested that Mrs. Jones was being used for an improper ulterior motive that was a malicious abuse of process.

278. Mrs. Jones ratified this reality base on her reaction.

279. Mrs. Jones became bent on punishing Mr. Sevier, which would serve Mr. Ramsey's goal of reprisal and create grounds for Mr. Sevier to be prejudiced in any subsequent civil proceeding.

280. Mrs. Jones did not at any point do an adequate investigation into the allegations that she trumped up for the benefit of others for an improper ulterior purpose.

281. On August 3, 2009, Mr. Sevier filed a complaint against Mr. Ramsey and Mrs. McKenzie with the board that was supported by direct evidence for the matters first presented to the Board on June 2, 2009. Id. 201 – 248. Mr. Sevier did not necessarily desire to file the complaint, but he had an obligation to do so.

282. Mr. Sevier detest having to report a lawyer for ethical violations, even though he believes that rules of the Board are necessary and serve an important function in the justice system.

283. On August 3, 2009, Mrs. Jones sent Mr. Sevier a letter stating that (1) she did not credit his explanation to the first inquiry, (2) that she found it significant that he had not filed his complaint against Mr. Ramsey and Mrs. McKenzie after meeting with Mr. Vick on June 2, 2009 and discussing Mr. Ramsey and Mrs. McKenzie's prospective violations, (3) that Mr. Ramsey and Mrs. McKenzie had not directly prompted the Board to look into the matter that some mystery person had, (4) that Mr. Sevier, himself, was now officially under investigation, and (5) that Mr. Sevier was now required to provide information and explanations to his first set of explanations. Id. 249 – 250.

284. Before Mr. Sevier filed his response, Mrs. Jones had already decided to conduct an investigation pursuant to her ulterior motives for the benefit of Mr. Ramsey, Mrs. McKenzie, and Mr. Rich.

285. Mrs. Jones misuse of the Board is substantial because it has chilling effect on attorney's willingness to report violations and is adverse to the interest of the public.

286. Mrs. Jones' allegation about Mr. Sevier not filing his complaint against Mr. Ramsey and Mrs. McKenzie was false.

287. Mr. Sevier had filed his complaint against Mr. Ramsey and Mrs. McKenzie on August 3, 2009 the day that she published the letter.

288. Although she was probably unaware of this, she was bent on generating grounds to prejudice Mr. Sevier in his existing and prospective civil litigation.

289. At no point in time was a deadline imposed on Mr. Sevier for providing the Board a copy of his complaint against Mr. Ramsey and Mrs. McKenzie.

290. Mrs. Jones was merely determined to come up with some kind of violation for the benefit of Mr. Ramsey to prejudice Mr. Sevier in existing and prospective civil proceedings.

291. Mrs. Jones misused the powers of her office effectively reducing it to the "thought police" through a campaign that was metaphorically comparable to a Salem Witch hunt.

292. On August 7, 2009, Mr. Sevier filed a motion to stay discovery in the civil proceedings because the Mrs. McKenzie and Mr. Ramsey were using Mr. Rich's frivolous civil case for defamation to gain leverage in the criminal one. Id. 306 – 314.

293. This was all part of a malicious pattern to obstruct justice.

294. Sometime before August 10, 2009, Mr. Sevier filed his second response to the Board's August 3 inquiry explaining that he filed his first response with the court to make it part of the public record to "make sure that [he] was not being collectively retaliated against for reporting the suspects to the state for prosecution." 251 – 287.

295. Mr. Sevier aggressively defended his actions as being strictly ethical.

296. Mr. Sevier believed that Mrs. Jones allegations violated the Anti-Slapp statute because it infringed on his first amendment rights.

297. Despite the fact that Mr. Sevier's ethical complaint against Mr. Ramsey and Mrs. McKenzie was well documented and supported by strong evidence of wrongdoing, on August 10, 2009 Mrs. Jones informed Mr. Sevier that his complaint against the Mr. Ramsey and Mrs. McKenzie had been immediately dismissed without an investigation into the matter.

298. Despite her oath of office, Mrs. Jones was never interested in the truth or the merits. She was determined to misuse her office for the benefit of Mr. Ramsey, Mrs. McKenzie, and Mr. Rich.

299. Abused discretion by dismissing the complaint against Mr. Ramsey and Mrs. McKenzie without even remotely considering the evidence and insurmountable probable cause supporting the complaint.

300. Mrs. Jones violated Mr. Sevier's due process rights by maliciously acting in reprisal to punish him for doing his ethical duty to report Mrs. McKenzie and Mr. Ramsey's misconduct.

301. Mrs. Jones sought new explanations about Mr. Seviers second explanation to his first. Id. 287 – 290.

302. Mrs. Jones lacked the character to recuse herself from reviewing the complaint against her friend, Mr. Ramsey, even though she is the head of the ethics commission for the state of Tennessee.

303. Mrs. Jones prior relationship and connection with Mr. Ramsey should have caused her to recuse herself from evaluating the merits of the complaint lodged against him.

304. Upon information and belief, around this time the District Attorney's office learned that Mr. Sevier was accusing ADA Jackson of falsely misrepresenting the events on June

2, 2009 in defending his actions to the Board, which caused the District Attorney's office to aspire to retaliate against him.

304. The District Attorney's office decided to not zealously represent Mr. Ashley in his case against Mr. Rich so that Mrs. McKenzie and Mr. Ramsey could have a basis for filing a malicious prosecution lawsuit.

305. On August 18, 2009, Mrs. Jones sent Mr. Sevier another oppressive letter in bad faith that was accusatory and lacked probable cause, which the Mr. Sevier responded in opposition. 293 – 303. Mrs. Jones was simply abusing Mr. Sevier because she believed she could without any accountability.

306. In mid August, Mr. Sevier filed a motion to stay discovery in Mr. Ashley's civil trial until the parallel criminal case was resolved to preserve judicial economy.

307. On August 19, 2009, Mr. Sevier emailed ADA Welch asking if she would provide an email that she supported staying discovery in Mr. Ashley's civil case because the evidence showed that Mrs. McKenzie and Mr. Ramsey were using the civil trial to undermine the criminal prosecution. Id. at 304.

308. At this point, Mr. Sevier did not suspect that she was biased against him for implying that her colleagues ADA Jackson and ADA Sexton had misrepresented the truth to the Board.

309. On August 20, 2009, ADA Welch responded by falsely stating that she would coincidentally be in the same civil court that morning and would let Judge Binkley know the states position on the matter. Id. at 305. This statement was false ADA Welch had no other reason for being in the 5th Circuit, civil court that day and had not intended on being there before this.

310. Mr. Sevier thanked her assuming that she would support the motion. Id. 305.

311. However, at the hearing August 21, 2009 to stay discovery, ADA Welch stood up at the beginning of Mr. Sevier's oral argument, interrupted him deliberately, and crassly stated that she wanted to let the Court know that the state wanted to have nothing to do with this case.

312. With that, she stormed out of the courtroom.

313. This set a negative tone at the hearing and the Court denied Mr. Sevier' motion, which was adverse to the states case.

314. ADA Welch's actions were merely a retaliation for Mr. Sevier accusing ADA Jackson to the Board for making false misrepresentations at the June 2, 2009 in his responses to their inquiries.

315. At 5:54 PM, Mr. Sevier sarcastically emailed ADA Welch, "thanks for appearing" as a passive aggressive way of suggesting "really, was that necessary?" Id. at 314.

316. ADA Welch's affirmative steps to allow Mr. Rich's attorney's to use the parallel civil proceedings to prospectively gain information that could impact the criminal proceedings raised were pursuant to her disloyalty to Mr. Ashley and part of ongoing reprisal for Mr. Sevier's reporting Mrs. McKenzie and Mr. Ramsey. Id. at 314.

317. ADA Welch's affirmative act was part of the District Attorney's office invalid cooperation with Neal & Harwell to use the Board as reprisal for Mr. Sevier's decision to honor his duty to report Mrs. McKenzie and Mr. Ramsey to the police and to the board for several violations that were supported by probable cause.

318. On August 25, 2009, Mr. Ashley provided an affidavit confirming several facts to include that (1) on March 28, 2009, ADA Sexton had called him in response to false

report by Mrs. McKenzie that he and Mr. Sevier had allegedly demanded money from Mr. Rich to drop criminal charges; that (2) he was present at the meeting with ADA Jackson, who never explained that the suspects actions "did not rise to the level of a crime" as ADA Jackson falsely alleged on June 23, 2009; that (3) at the meeting on June 2, 2009, the term "mediator" was never mentioned; (4) that ADA Jackson had indicated at the meeting on June 2, 2009 that the next step in the investigation was for Mr. Sevier to bring him the audiotapes; and that (5) he left under the impression that the state was going to investigate into the matter. Id. at 319 – 323.

319.  Mr. Sevier assisted Mrs. Harrison in creating an affidavit, but she had to return to Arkansas because her father became ill. There were some changes made to the first draft of the affidavit.  She agreed to sign it, but did not because her dad would not let her sign anything.  She did not return to Belmont in the fall. Id. 315 – 317.

320.  On August 26, 2009, Judge Haynes dismissed Mr. Sevier's case in District Court in total error.  Judge Haynes dismissed the case despite the fact that the Mr. Sevier had sufficiently pled abundant facts supporting Federal Question jurisdiction through the claim for a Federal Declaratory Judgment pursuant to the Copyright Act for a case of noninfringement based on his and his employer's reasonable apprehension of copyright litigation. Id. 324 – 333.  This was classic abuse of discretion.

321. Upon information and belief, Judge Haynes was aware of Mr. Sevier's external disputes with Mr. Ramsey, Mrs. McKenzie, and Mrs. Jones at the time he ruled on the motion to dismiss.  It is even possible that Mrs. Jones and Judge Haynes had ex parte discussions on these matters.

322. Judge Haynes dismissed Mr. Sevier's state law claims without prejudice, permitting him to file them here in state Court.

323. In late September, Jay Bowen and Mr. Sevier appealed the case to the Sixth Circuit Court of Appeals where the case is now poised for oral argument.

324. On August 26, 2009, at a great expense and embarrassment, Mr. Sevier employed Scott Sims to represent him in the Board case because it seemed to all be about relationships, not the merits. Id. at 336.

325. Like Mr. Ramsey, Mr. Sims was the former President of the Nashville Bar and was part of the same legal societies as Mrs. Jones. They in a effect spoke the same language and shared the same values.

326. Incredibly these things seem to matter, not the facts and the merits.

327. Mr. Sevier felt as if these individuals constructively knew some kind of secret handshake that as a young new comer he was apparently not privy to.

328. On August 31, 2009, Mr. Sevier worked through the Tennessee Association for Justice to compelled Joe Napitalia Esq. to substitute as counsel for him in Mr. Ashley's case because he became worried that a conflict of interest could arise because his Federal case got dismissed and Mrs. McKenzie and Mr. Ramsey would use this to prejudice Mr. Ashley's case.

329. Mr. Sevier met with Mrs. McKenzie and Mr. Ramsey on August 31, 2009.

330. Mr. Sevier informed Mr. Ramsey and Mrs. McKenzie that he was going to withdraw from representing Mr. Ashley because he was going to deploy to Operation Iraqi Freedom and that counsel was being substituted. During the meeting, Mr. Sevier informed Mr. Ramsey and Mrs. McKenzie that he was considering coming after them

through the legal system for publishing knowingly false statements to the media on May 29, 2009, as he had originally promised on May 30, 2009, when he sent them the retraction demand. Id. at 324 – 333.

331. Mrs. McKenzie gloated over the fact that the use of Mr. Oswald was her idea.

332. On September 8, 2009, Mr. Sims indicated that Mrs. Jones was considering issuing a public censure against Mr. Sevier for violations that remained unknown.

333. There were no violations and Mrs. Jones knew this to be the case.

334. Mrs. Jones was interested in issuing a public censure because a public censure could be used in part to ward off Mr. Sevier's inevitable cause of action against Mr. Ramsey and Mrs. McKenzie for libel that he had been threatening to file since May 30, 2009, and she was acting in league with them.

335. A public censure could be used to impeach Mr. Sevier's character, which would harm his recovery in his existing and inevitable civil court for his libel cases.

336. Mrs. Jones, Mr. Rich, Mr. Ramsey, and Mrs. McKenzie's intent was to obstruct justice through a state actor. The fact that Mrs. Jones, the head of the Board for the State, was working so hard to punish Mr. Sevier in what amounted to his first case was not an accident.

337. Mr. Sims indicated that two things needed to be supplied to Mrs. Jones as soon as possible: (1) specific documentation showing that Mr. Sevier was going to deploy with his unit to combat and (2) proof that Mr. Sevier's first response with the Board had been stricken from the record.

338. In June of 2008, the Bush Administration issued an executive order, which officially placed the public on notice that the members of the 278th Armored Cavalry

44

Regiment in Tennessee would deploy in December 2009 for one year. This notice was designed for the families, the Soldiers, employers, the courts, and the like, but this notice was insufficient for Mrs. Jones.

339. This notice was not insufficient. Mrs. Jones was never interested in the truth. She was knowingly part of a malicious collaboration to abuse process.

340. Mr. Sevier suspected that Mrs. Jones wanted the pleadings stricken from the Court so the Board could bully him without sufficient probable cause for the allegations behind closed doors away from public scrutiny.

341. The Board under her charge was drawing heat from the public for being overly aggressive and Mrs. Jones knew this to be the case.

342. The reasons Mrs. Jones wanted to keep the proceedings private was not pursuant to supreme court rule 9, but so that she could bully him without accountability and public scrutiny.

343. Mr. Sims informed the Mr. Sevier that Mrs. Jones said that he might have to be disqualified from representing Mr. Sevier because he had some kind of indirect connection with the Board. Id. at 343.

344. Mr. Sevier insisted that Mr. Sims fight to stay on his case because his presence brought some accountability to Mrs. Jone's frivolous campaign that was void of good faith. Id. at 343.

345. On September 8, 2009, Mrs. Jones emailed Mr. Sims, "I don't see why another member of the firm could not handle the matter. Any of the calm, cool, level-headed types you have there should work fine."

346. In this email, Mrs. Jones wrongfully implied in writing that Mr. Sevier was not "calm, cool, nor level-headed." Id. at 345.

347. Mr. Sevier was embarrassed and offended by Mrs. Jone's email. Id. at 345.

348. As the Chief Displinarian of the Board of Professional Responsibility, Mrs. Jone's emailed was unethical and unprofessional.

349. On September 8, 2009, Mrs. Jones emailed Mr. Sims that if Mr. Sevier would get evaluated by TLAP, she would consider this to be a factor in mitigation. Id. at 347.

350. Mr. Sevier declined to be evaluated by TLAP because he has never smoked a single cigarette nor taken any illegal drugs at any point in his life. Mr. Sevier very rarely drinks alcohol. He has no other vices other than his passion for rock music.

351. On September 14, 2009, Mr. Sevier filed a motion to strike his first response to the Board's inquiry on file with the Court because of the undue pressures place on him by Mrs. Jones. Id at 334 – 335.

352. On October 27, 2009, Mrs. Jones demanded to know why Lieutenant Sevier had not provided a copy of his mobilization orders. Id. at 335. Lieutenant Sevier gave Mr. Sims a copy of his units general order to give to Mrs. Jones that was designed for these kinds of things.

353. At this time, it remained was undecided if Lieutenant Sevier's Unit was going to Iraq or Afghanistan and the military wanted to keep this decision confidential for reasons that relate to the interest of national security.

354. On November 5, 2009, Mr. Sims emailed Mrs. Jones a news link that showed that Lieutenant Sevier's unit was scheduled deploying in 30 days. Id. at 361.

355. On November 13, 2009, at 8:45 AM, Mrs. Jones emailed Mr. Sims that "It seems to me that Mr. Seiver is once again not being forthcoming" because he had not supplied a copy of his deployment orders.

356. Mrs. Jones' knew that her position was false.

357. Mrs. Jones' contention was unethical in light of the Rules of Professional Conduct.

358. ~~Mrs. Jone's was acting to further the malicious campaign in a concerted effort with~~ Mr. Ramsey, Mrs. McKenzie, and Mr. Rich.

359. By this time, Lieutenant Sevier had had been bullied enough by Mrs. Jones. He elected to respectfully resist and fought back against her hypocritical campaign of compound injustice, invoking his sown duties as an Officer of the Court to promote the integrity of the Nashville Bar in spite of Mrs Jones' willful perversion of it.

360. In her email, Mrs. Jones shamelessly embraced a service discrediting position that was prospectively actionable through the Civil Division of the U.S. Attorney's office.

361. Mrs. Jones tactlessly used Mr. Sevier's military service to our nation at critical time for him and his family, just before deployment, as grounds to antagonize him by improperly attacking his integrity concerning his voluntary overseas deployment. Id. at 365. Mrs. Jones has not served a minute in the military, nor has she gone overseas to defend our Nation and the very idea that she would bully Lieutenant Sevier over his service is so Anti-American that she should be ordered to step down as the Chief of the Board of Professional Responsibility on that basis alone.

362. Mrs. Jones then went on to say in her email to Mr. Sims: "Please advise whether Mr. Sevier will agree to the imposition of a Public Censure for his misconduct or whether I need to seek the Board's approval for a Petition for Discipline." Id

363 Upon information and belief, Mrs. Jones temporarily considered a private reprimand at one point, but then escalated the discipline realizing that a disciplinary measure needed to be a public one in her efforts to pander to Mr. Ramsey.

364. Because Lieutenant Sevier could not supply a version of his military orders that Mrs. Jones felt was adequate, she decided to use this against him and implement a public censure, which would undermine his current and foreseeable civil litigation.

365. Mrs. Jones was permitting a service member to be prejudiced for his military service at no fault of his own because she and Mr. Ramsey knowingly had an immoral agenda that was designed to obstruct justice.

366. Mrs. Jones actions were categorically improper.

367. Lieutenant Sevier would not have even settled for a reprimand because he has too much integrity to allow himself to be punished for doing his duty to report wrongdoing by a person in power with a corrupt agenda.

368. At 9:06, Mrs. Jones emailed Mr. Sims, "I can draft the proposed censure for his review. In light of your situation, to whom, should I forward the draft?" Id. at 366.

369. At 12:47, Mr. Sevier decided to start emailing Mrs. Jones directly. Mr. Sims is an awesome lawyer, but Mr. Sevier was not going to settle for anything other than outright dismissal because he was to disgusted by the entire thing.

370. "Playing nice" does not work when one is dealing with elitist bullies with an improper ulterior agenda, who believe they are unaccountable.

371. In Mr. Sevier's email to Mrs. Jones, he stated that he had made several attempts to get a copy of his individual orders but they were not available; that if she really did not

believe he had been forth coming, he would prefer to give up practicing law, losing faith

in the justice system; and that he "had always been honest." Id. at 386.

372.  At 1:14 PM, Lieutenant Sevier emailed his superior Lieutenant Colonel John Mark

Windle and attached Mrs. Jones stating:

> "Congressman Windle, will you please confirm to Nancy Jones that I have had a
> factual basis for believing that I will be deploying with the 278th in December
> 2010 for the past several months and that if I made statements to Judge Binkley in
> the 5th Circuit or to her that I was deploying that those statements would have
> been made on a sincere basis. Mrs. Jones has accused me [wrongfully] of not
> being "forthcoming" on that matter, and I cannot provide copies of my orders.
> She has literally recommended taking disciplinary action….see you at Camp
> Shelby" Id. at 369.

373.  At 2:46, Mr. Sims asked Lieutenant Sevier not to have any more direct

communication with Mrs. Jones. At 3:00 PM, Lieutenant Sevier emailed Mr. Sims, " If

the truth is insufficient in the Nashville justice system. Then, what's it about?" Id at 370.

374.  At 3:35, Mr. Sims, replied, that Lieutenant Sevier was "poking bears" referring to

Mrs. Jones, as a bear, which the dictionary defines as a wild and vicious animal.

375.  At 3:21 PM, Lieutenant Sevier responded: "more like stabbing."

376.  On November 14, 2009, at 12:38, Lieutenant Sevier emailed Mrs. Jones that she

could call any of his commanders about his deployment providing her with numbers; that

she could call Mr. Ashley or Ms. Harrison about whether ADA Jackson had indicated

that the suspects actions had not rise to the level of a crime; and that she was allowing

Mr. Ramsey and Mrs. McKenzie to use her office as a sword to adversely impact civil

and criminal litigation, obstructing justice. Id. 372 – 373.

377.  At 9:42 PM, Mr. Sims understandably emailed Lieutenant Sevier that his

communications with Mrs. Jones makes it "appear that I am not doing my job very well,

which is a personal embarrassment….I plan to advise [Mrs. Jones] on Monday that we no

longer represent you in this matter." Id. at 374. Mr. Sims put his own interest above his

clients because Lieutenant Sevier wanted to stand up to Mrs. Jones ethical abuse in a way

that Mr. Sims would not.

378. Neither Mr. Sims nor Mrs. Jones were ever served in the military nor have they ever

voluntarily deployed to a foreign theater of war in defense of our country.

379. At 1:28 PM, Mrs. Jones showed that Mrs. McKenzie and Mr. Ramsey were behind

her actions and emailed Mr. Sims:

> "The contention in his communications today that the Board has been used by
> lawyers opposite him as a sword to gain an unfair advantage in litigation is
> troublesome on number of levels, including the fact that it is not true. I find this
> contention particularly disingenuous on his part, in light of the fact that he filed an
> entirely baseless complaint against certain Neal & Harwell lawyers during the
> course of the Board's investigation of his own Conduct as applied to the alleged
> actions of Bill Ramsey and Cynthia [McKenzie], his factual misrepresentations
> about their conduct themselves warrant discipline and have been included in the
> results of our investigation. In light of the fact that he will not consider a Public
> Censure as a means of resolving our investigation, I will present our findings to
> the Board at its next meeting and request permission to file a Petition for
> Discipline." Id. at 378.

380. Mrs. Jones decision to increase punishment had a military connection and was

based on nothing more than out of control emotionalism, not probable cause.

381. In her email, Mrs. Jones erased any lingering doubt that she was acting on behalf of

Mr. Ramsey and Mrs. McKenzie and that her unjustifiable misuse of her office was

intended to punish Mr. Sevier for attempting hold her friends accountable. When Mrs.

Jones published this email in response to statements in which Lieutenant Sevier, never

made any references to Mr. Ramsey and Mrs. McKenzie.

382. Mr. Sevier's ethics complaint lodged against Mr. Ramsey and Mrs. McKenzie was

not baseless, and Mrs. Jones knew this to be the case.

383. Mrs. Jones mentioned Mr. Ramsey and Mrs. McKenzie in this email because they were the individuals behind her actions.

284. Mrs. Jone's email contained false statements because Lieutenant Sevier's complaint against Mr. Ramsey and Mrs. McKenzie was well founded by probable cause.

385. Mrs. Jone's email contained false statements in so far as Lieutenant Sevier's complaint against Mr. Ramsey and Mrs. McKenzie was not included in the Board's frivolous petition for discipline.

386. At 11:46, in protecting his own interest at the expense of his client, Mr. Sims' emailed Mrs. Jones, "Nancy, I apologize for these direct communications. Effective immediately we no longer represent Mr. Sevier in this matter." Id. at 379. Mrs. Jones emailed Mr Sims, at 8:37 on November 15, 2009, "I understand and am sorry that Mr. Sevier will not have the benefit of your firm's wise counsel." Id. at 379.

387. Mrs. Jones implication in her response was unprofessional and unethical. This is because she believes that she can act with impunity.

288. Mr. Sims placed his own interest over his client's and withdrew underscoring a problem in the system in that it is too heavily relationship based, not merit centered.

389. On November 17, 2009, Lieutenant Sevier emailed Mrs. Jones if she would send him a copy of the public censure so that he could at least see what it says and that he was "definitely guilty of being defensive, when wrongfully accused of dishonesty." Id. at 383

390. At 4:27 PM, Mrs. Jones emailed Lieutenant Sevier, "Our prior suggestion that a public censure might be the appropriate resolution has proven misinformed in light of the final paragraph of Judge Haynes memorandum filed in August 27, 2009 dismissing your federal court action as groundless." Mr. Sevier does not believe that Mrs. Jones has the

51

time to read all of his pleadings, instead it is the case that Mr. Ramsey was feeding her

ammunition to accomplish their collective improper ulterior motives.

391. Judge Haynes decision to dismiss Severe Records' complaint in Federal Court

had been an enormously gross abuse of discretion. The complaint in Federal Court for a

declaratory judgment pursuant to the Copyright Act for a case of noninfringment in light

of an abundant amount of facts establishing the reasonable apprehension of copyright

litigation.

392. At the time Mrs. Jones made this statement, she knew or should have known

that the case had been appealed to the Sixth Circuit Court of Appeals, since the case was

a matter of public record.

393. These individuals simply do not want Mr. Sevier to be successful in court because

they unjustifiably promote a justice system based on relationships and wealth, not merits.

394. The fact that this Federal Court Action directly related to Mr. Ramsey and Mrs.

Mckenzie and was another frivolous ground for discipline was by no means a

coincidence.

395. Mrs. Jones included the wrongful dismissal as part of her grounds to increase

punishment because she was acting in a concerted effort to abuse Mr. Sevier for reporting

Mr. Ramsey and Mrs. McKenzie to cause Mr. Sevier to be disadvantaged in civil

proceedings.

396. At 7:37 PM, Lieutenant Sevier emailed Mrs. Jones that (1) Judge Haynes ruled in

total error of the law; that (2) she was not going to like it but he was going to file a

lawsuit against Mr. Ramsey and Mrs. McKenzie for making false statements in the

media, that (3) "I know that everyone likes Bill, but he arguably violated or allowed the

violation of the first rule taught in law school that you do not violate the rules in order to win;" that (4) he wanted to send her a copy of the appellate brief, and that (5) he was still unaware of what they were saying he had done wrong. Id. at 384.

397. Lieutenant Sevier made these statements because it was not even remotely secretive that she was being used as an unlawful instrument of Bill Ramsey.

398. At 7:37, Mrs. Jones retorted: "I have a copy of the appeal brief. I do not need anything further from you on any issue." Id. at 384.

399. Mrs. Jones was never interested in the truth. She was only determined to punish Mr. Sevier for attempting to report Mr. Ramsey and Mrs. McKenzie to the police and board.

400. Mrs. Jones had undeniably reduced the legal system to a popularity contest in which she favored her peers and was not even remotely interest in the truth at any point during her malicious campaign that was categorically founded on abuse of process.

401. On November 17, 2009, Lieutenant Sevier emailed Mrs. Jones a proposed settlement solution to end the nonsense that during his deployment (1) that the case be stayed under the Servicemembers Civil Relief Act and (2) that during the deployment, Mr. Sevier would "be required to keep a log of all of the families and Soldier who [he] help[ed] on a pro bono basis while on orders and submit that to [her] quarterly, so that [she] can verify that [her] decision was in the best interest of the greater good for the State of Tennessee." Id. at 387. Lieutenant Sevier intended to help hundreds of Soldiers and their families with their personal legal problems throughout the deployment.

402. Lieutenant Sevier derives a great deal of satisfaction from helping the indigent, and he knew that he would help a lot of them during the deployment, which Mrs. Jones would appreciate because she probably secretly has a good heart, when she is not otherwise

53

fulfilling the dishonest agenda of Mrs. McKenzie and Mr. Ramsey and misusing her

position with the state to obstruct justice.

403. On November 18, 2009, Mr. Sevier employed a solid attorney named, John Griffin,

to represent him in this case against the Board at an expense. Id. 390.

404. On November 20, 2010, John Rich's criminal trial was held.

405. As part of Mrs. McKenzie, Mr. Rich, and Mr. Ramsey's vindictive retaliation

campaign, they subpoenaed Mr. Sevier to testify.

406. Mr. Ramsey and Mrs. McKenzie sought to use the trial to personally attack the Mr.

Sevier on the stand. Even ADA Welch was determined to attack Mr. Sevier on the stand

because he had alleged that ADA Sexton and ADA Jackson had misrepresented the truth

in defending his conduct to the Board in self defense.

407. The Honorable Judge Holt saw though this improper agenda and did not allow it.

Mr. Sevier was not called to testify.

408. A t trial, ADA Welch did not represent Mr. Ashlely zealously.

409. ADA Welch only called Mr. Ashley to the stand and then rested her case because

she did not want him to be successful.

410. Mr. Griffin was present in the Court room and observed the entire trial. He was

prepared to protect Mr. Sevier from unwarranted and irrelevant attacks from either side,

if necessary.

411. Detective Anderson was present and prepared to testify that during the course of his

investigation Mr. Glasgow, Mr. Rich's body guard, admitted to him on two separate

occasions that Mr. Rich reached around him and struck Mr. Ashley. Neither Detective

Anderson nor any other witnesses who observed the assault were called to testify because of the improper concerted effort amongst the conspirators.

412. The Honorable Judge Holt ultimately had no other choice but to find Mr. Rich not guilty on the assault charge at the Spot, despite the overwhelming evidence of his guilt that was not presented into evidence by ADA Welch.

413. The evidence used to support probable cause of the charge was not even presented.

412. The community in Nashville believed that Judge Holt made the wrong decision, but that was not true. The wrong decision was by ADA Welch's not to zealously represent the people of Tennessee for an improper purpose.

414. In terms of the harassment phone call, this charge was dismissed in error by Judge Holt because Mr. Ashley admitted that he felt honored to get the phone call, but this was only as it related to Sebastian Bach, not Mr. Rich who had just assaulted him and who had threatened to come to his house and continue to attack him if he reported him to the police.

415. This was a difference with a distinction that was not clarified due to ADA Welch's lack of zeal.

416. ADA Welch did not zealously perform her duties as a prosecutor in retaliation for Mr. Sevier's accusations in defending his character that the District Attorney's office had misrepresented the truth about the events on June 2, 2009 at the in take office to support Mr. Ramsey and Mrs. McKenzie's reprisal.

417. ADA Welch intended to give Mr. Ramsey and Mrs. McKenzie's a basis to sue Mr. Sevier for malicious prosecution and abuse of discretion.

418.   On December 14, 2009,  Lieutenant Sevier through Mr. Griffin, sent Mrs. Jones a

copy of his Title 10 orders and a letter from the Deputy Regimental Commander, Colonel

Mccauley, to support his request to stay the proceedings. Id. at 411 – 412.

419.   Delivering the orders conclusively demonstrated that Mrs. Jones had been

completely wrong about the Lieutenant Sevier's integrity concerning the deployment,

making her service discrediting position prospectively actionable. Id. at 411 – 412.

420.   However, Mrs. Jone's campaign was never about the rules of professional conduct

but generating grounds to prejudice Mr. Sevier in his ongoing and foreseeable civil

litigation for others benefit.

421.   In January 24, 2009, the Nashville Business Journal published an article that was of

and concerning Mrs. Jones and Mr. Ramsey. (See Exhibits Q. at 413 – 415).

422.   In the article Mrs. Jone's board was accused of being overly zealous. (See Exhibits

Q. at 413 – 415).

423.   The fact that out of the thousands of lawyers in Tennessee, Mr. Ramsey was

featured in the article with Mrs. Jones was no coincidence. (See Exhibits Q. at 413 –

415).  The tow are inescapably linked.  They have been for years and this was in part why

they formed their invalid collaboration.

424.   It was not by coincidence that the same day this article was published, Krisann

Hodges was reassigned to take over the Board's malicious reprisal campaign against Mr.

Sevier.  Id. at 416.

425.   Like Mr. Sevier, Mrs. Hodges could not even figure out what the charges

prospectively were. Id.

426.   That was because there were no real charges.

427. In March 2010, Mrs. Hodges eventually decided to retire the case. Id at 417.

428. During the Deployment Lieutenant Sevier made good on his promise to Mrs. Jones to provide pro bono legal aid services to countless Soldiers and their families.

430. Eventually, Lieutenant Sevier and Congressman, Lieutenant Colonel John Mark Windle had a following out, when Lieutenant Sevier embarrassed the Congressman's illegal girl friend in a memorandum that related to 15-6 investigation into a criminal matter involving Soldiers in Alpha Troop in Regimental Fire Squadron in Kuwait. (See Exhibit).

429. Lieutenant Sevier drafted the memorandum within the scope and line of his duties as a Judge Advocate to protect his command. This was his duty, just like it was his obligation to report Mrs. McKenzie and Mr. Ramsey to the Board for misconduct.

430. In both cases in fulfilling his duties under the law, LT Sevier should not have to worry about invalid reprisal that is designed to obstruct justice from individuals in power, who are bent on keeping it.

431. Like Mrs. Jones, the Congressman acted in reprisal to thwart Lieutenant Sevier from reporting him to the Inspector General, which was a per se act of reprisal and violation of Department of Defense Regulations.

432. The Congressman's malicious efforts caused Lieutenant Sevier to be falsely imprisoned in Landstuhl Germany, where he was systematically abused.

433. Lieutenant Sevier filed a lawsuit against the Congressman in Federal Court on March 16, 2011, after the Board, once again, wrongfully attempted to use his military service to our nation to prejudice him for merely doing his duty as a Judge Advocate to our Nation overseas for the benefit of the Soldiers in Cobra and Fire Squadrons.

434. The superceding cause of the conflict that arose in Iraq directly goes back to Lieutenant Sevier's desire to achieve legal results for Tennesseans to impress Mrs. Jones so that she would abandoned her malicious campaign that originated pursuant to the dishonest agenda of Mr. Ramsey and Mrs. McKenzie through the cooperation of ADA Sexton, ADA Jackson, and ADA Welch.

435. Around May 28, 2010, Mrs. Jones malicious efforts to intimidate Mr. Sevier into not pursuing Court action against Mr. Ramsey and Mrs. McKenzie failed. Now a Jury gets to decide whether there actions were unlawful, since Mrs. Jones did not even consider the complaint against them. Mr. Sevier refiled the state law claims that Judge Haynes had dismissed from Federal Court in the Tennessee State Court against Rich, Mafia, and Crooks. Mr. Sevier also named Mr. Oswald, Mr. Ramsey, and Mrs. McKenzie in the suit for the defamation they committed on May 29, 2009, when they went to the media and libeled him and Mr. Ashley on a national level.

436. Mr. Sevier admits that the complaint was not very well drafted because it was hastily filed to meet the statute of limitations deadline, even though the Service Members Civil Relief Act allows for the tolling of the statute of limitations. Mr. Sevier mistakenly filed the unedited draft and not the final version. In this version, Mr. Sevier did call Mr. Ramsey a "patronizing goober."

437. Lieutenant Sevier actually had more time to file the lawsuit under the tolling of the statute of limitations in the Service Members Civil Relief act. This was especially true because Lieutenant Sevier had been returned to the United States through the wounded warrior program and was classified as in recovery for injuries by his unit until December

2010, as a result of Congressman Windle's reprisal to stop him from reporting his unlawful actions to the Inspector General.

438. Although this statement was judicially privileged and later taken out, Mr. Sevier admits that he should not have done that. This minor offense was nothing compared to damaging consequences of the immoral acts of Mr. Ramsey and Mrs. McKenzie in the media.

439. Of course, this name calling was no worse than when on September 8, 2009, Mrs. Jones effectively stated that Mr. Sevier was not "calm, cool, level-headed" in an unethical email to Mr. Sims. Id. at 345.

440. In response to the complaint, on June 3, 2010, Mrs. McKenzie rushed to her conspirator, Nancy Jones, to compel her to punish Mr. Sevier for trying to hold her and Mrs. Ramsey accountable for their dishonest slander in the media on May 29, 2009. Exhibit Q at 419. Before Mrs. McKenzie and Mr. Ramsey had tried to be keep their use of Mrs. Jones a secret, acting as if they had nothing to do with her malicious campaign.

441. But since Mrs. Jones' efforts to prevent Mr. Sevier from filing a lawsuit against her and Mr. Ramsey had failed, Mr. Ramsey and Mrs. McKenzie felt that secrecy was no longer necessary. They began supplying Mrs. Jones with additional ammunition so that she could misuse her office through the state.

442. At 1:46 PM, Mrs. McKenzie emailed Mrs. Jones a copy of the Mr. Sevier's complaint against her Mr. Ramsey, Mr. Rich, Muzik Mafia, Mrs. Crooks, and Mr Oswald stating: "Nancy, I though you would like to have a copy of a Complaint filed 5/28/10 by Chris Sevier. We have not been served yet. (I got married on 4/23, so my new name is Cyndi McKenzie." Id.

443. Mrs. McKenzie "thought" Mrs. Jones would like a copy of the complaint because she knew that Mrs. Jones was bent on punishing Mr. Sevier for the benefit of Mr. Ramsey to disadvantage Mr. Sevier in civil proceedings.

444. On June 7, 2010, Mrs. Jones emailed Mr. Griffin asking him to please shed some light on this situation and pointed out that Mr. Sevier had in fact wrongfully called Mr. Ramsey a "patronizing goober." Id. at 419. Mr. Griffin responded that Mr. Sevier intended to amend his complaint once he got settled back in after returning from combat.

445. Despite the harmless inappropriate judicially privileged "name calling," Mr. Sevier called Mr. Ramsey a patronizing goober on a good faith basis. At a settlement conference in September 2009, Mr. Ramsey kept referring to himself as being capable of being Mr. Sevier's law professor. In addition to that, Mr. Sevier and Mr. Bowen believed its was goober like for Mr. Ramsey to attempt to emulate Jim Neal at meetings to discuss the case.

446. In August 2010, Mr. Sevier sent Mr. Ramsey a settlement offer. In the offer Mr. Sevier stated that he was coming after him, clearly referring to coming after him through the legal system.

447. In keeping with the pattern of misconduct, Mr. Ramsey attempted to convert that statement into a physical threat to his eager accomplice at the board, who remained on the prowl for a violation, even after she removed herself from the case in January 2010.

448. On September 2, 2010, Mr. Sevier's wife unexpectedly filed for separation. The basis for the separation was "abandonment." This allegation was completely frivolous and there was no probable cause to support the claim.

449. Mrs. Rogers primary objective in the case was to create a presumption that the Mr. Sevier posed a danger to his wife and child so that they could reside in Texas in violation of the statutory injunction concerning the 100 mile radius rule, pursuant to Mr. Sevier's father-in-law self serving agenda. See T.C.A. 36-4-106(d). There was no probable cause to support the abandonment allegation.

450. Upon information and belief, to accomplish this corrupt end, Mrs. Rogers began working with Mrs. McKenzie in tandem.

451. In September 2010, the recording artist known as Big Viny of the Tennessee Trailer Choir contacted Mr. Rich about doing a writing appointment. Mr. Rich threatened to undermine Big Viny's career because he supported and worked with Mr. Timother Chance Smith. Big Viny told Mr. Smith what Mr. Rich had said. Mr. Smith became infuriated at Mr. Rich and wrote a song about Mr. Rich to vent his frustration. At the time, Mr. Smith's management team was in negotiations with Universal Records in New York regarding a major label offer, and Mr. Smith believed that Mr. Rich was trying to disrupt negotiations, since Big Viny is an artist on a subsidiary of Universal.

452. In response, Mr. Rich employed Mrs. McKenzie to file for an order of protection, knowing simply to further oppress Chance, not because he was actually placed in fear of imminent bodily harm from the song.

453. Mrs. McKenzie decided to represent Mr. Rich even though she knew that she was a defendant with Mr. Rich.

454. Mrs. McKenzie appeared on behalf of Mr. Rich even though she understood that Mr. Smith was going to be testifying against them both at the Severe Records trial, after being served with Mr. Smith's affidavits in December 2008 and January 2009.

455. Mrs. McKenzie represented Mr. Rich against Mr. Smith even though she understood Mr. Smith to be a Severe Records recording artist.

456. Mrs. McKenzie appeared on behalf of Mr. Rich against Mr. Smith with the intent of developing a basis to undermine him in the civil trial against them both.

457. Mr. Rich, through Mrs. McKenzie, sought an order of protection for a free style rap that effectively violated Mr. Smith's freedom of speech and censored his lyrics.

458. Mr. Rich took Mr. Smith's lyrics about as literal as he takes his own in songs such as "kick my a$$," which was to say not whatsoever.

459. Mr. Rich and Mrs. McKenzie filed for an order of protection, even though Mr. Rich and Mr. Smith do not have a domestic relationship. Mr. Rich alleged that the song made him feel "molested" because he does not take the justice system seriously.

460. The order of protection case was designed to foster a basis to impeach Mr. Smith in the pending case against them both.

461. Mrs. McKenzie's intent was to violate Severe Records first amendment right under the Petition clause of the United States Constitution. She was misusing her license with the state to and the courts to violate Severe Records due process rights under the 14th amendment.

462. Mr. Sevier appeared on behalf of Mr. Smith at the hearing on October 25, 2010. The case was continued because Mr. Rich did not bother to show up because he was never actually in afraid of Mr. Smith.

463. Judge Robinson ordered Mr. Sevier and Mrs. McKenzie into the hallway to work out a schedule for the hearing where everyone could be present. During their discussion,

Mr. Sevier raised the issue that it was likely unethical for Mrs. McKenzie to represent

Mr. Rich, since she was a defendant with him in a pending lawsuit.

464. This statement was made in front of several witnesses.

467. Mrs. McKenzie retorted that she was immune from liability with the Board and that

Mr. Sevier would have about as much success reporting her unethical representation of

Mr. Rich as he had had back in August 2009.

468. Mrs. McKenzie then informed Mr. Sevier that she had specialized knowledge that

the Board was going to revive their complaint case against him that had been retired.

469. On November 5, 2010, Mr. Sevier appeared at a hearing before the Fourth Circuit to

attempt to make his wife comply with the statutory injunction regarding the 100 mile

radius rule. T.C.A. 36-4-106(d). Upon information and belief, Judge Smith is biased

against Mr. Sevier because of his parallel civil case against Neal & Harwell that was filed

in May 28, 2010. Every Judge in Davidson County recused themselves from the case,

which was removed to Williamson County.

470. Judge Smith denied the motion without a single solitary basis. At a later hearing on

January 13, 2011 in reference to the matter, Judge Smith took the position that he did not

enforce the injunction because he was entitled to act as the Alpha and Omega over such

matters, which is not what T.C.A. 36-4-106(d) says and was not the intent of the

Tennessee Legislature.

471. On November 19, 2010, Bill Ramsey contacted the Board and falsely alleged that

Mr. Sevier's settlement offer in August constituted a threat.

472. Mr. Ramsey knew that the settlement offer did not constitute a threat but was giving

the biased board ammunition to revive its malicious campaign.

63

473. On November 19, 2010, Mrs. McKenzie, on behalf of Mr. Rich, despite the glaring conflict of interest, filed the instant malicious prosecution and abuse of process lawsuit against Mr. Sevier.

474. This frivolous lawsuit was filed even though the evidence overwhelmingly demonstrates that Mr. Sevier had nothing to do with the criminal case. The filing of the lawsuit was part of a malicious pattern to obstruct justice.

475. More importantly, the lawsuit was filed even though the evidence conclusively demonstrates that there was overwhelming probable cause, indicating Mr. Rich's guilt for each of the charges brought against him.

476. Mrs. McKenzie's and Mr. Rich's malicious prosecution lawsuit has about as much validity as the Board's complaint was brought for the same reason to fulfill and improper objective.

477. Both the Board and Mr. Rich's lawsuit do have one thing in common in that they were filed to undermine Mr. Sevier's valid civil litigation.

478. Around November 30, 2010, Krisann Hodges filed a petition for discipline against Mr. Sevier for allegations that even an elementary investigation into their truthfulness would show that they were false charges.

479. Mrs. Jones and Mrs. Hodges knew that the petition was frivolous. They filed it so that it could be used to prejudice Mr. Sevier in existing and foreseeable civil litigation.

480. It was not by coincidence that Mrs. McKenzie filed Mr. Rich's lawsuit against Mr. Sevier and the Board filed a petition in the month of November.

481. To underscore the callous disposition of these individuals, they were aware that Mr. Sevier was losing his wife and child and that he was attempting to get back on his feet after returning from combat.

482. Krisann Hodges filed the petition without even questioning ADA Jackson or investigating into the truthfulness of the allegations.

483. Krisann Hodges simply filed the petition because she could, not because the allegations were supported by probable cause or she or Nancy Jones believed them to be true.

484. Krisann Hodges inappropriately took Mrs. Jones' highly suspicious and questionable findings and converted them into trumpeted up charges for the benefit of Mrs. McKenzie and Mr. Ramsey so that attorneys could use the petition to prejudice Mr. Sevier in civil proceedings, as a part of the malicious concert effort to misuse the Board.

485. In December 2010, Mrs. McKenzie contacted the Board of Professional Responsibility and falsely asserted that on October 25, 2010, Mr. Sevier's had physically threatened her.

485. Mrs. McKenzie's statements were maliciously published and knowingly false.

486. Mrs. McKenzie was as dishonest in that moment as she was on May 27, 2009, when she acted outside the protections of the law and falsely accused Mr. Sevier of extortion to ADA Sexton.

487. Mrs. McKenzie merely ratified her verifiable pattern to lie to public officials to garner an advantage for Mr. Rich so that he will continue to pay her inflated legal fees.

488. In response to Mrs. McKenzie's false statements to Mrs. Hodges, Mr. Sevier sent Mrs. McKenzie a notice demand for apology, correction, and retraction.

489. Mrs. Hodges informed Mr. Griffen that Mr. Sevier could not hold Mrs. McKenzie accountable for making false reports to the board because it would interfere with their case and constitute witness intimidation.

490. Mrs. Hodges used her position with the state to intimidate Mr. Sevier into not filing charges against Mrs. McKenzie and Mr. Rich as part of their ongoing collaboration. The board of ethics follows double standards.

491. Mrs. McKenzie and Mr. Ramsey do not have a Constitutionally protected right to make false allegations to the Board.

492. Mrs. McKenzie knew better than anyone having filed an ill advised lawsuit on behalf of her deluded client against Mr. Sevier for allegedly making false statements to the police that she would not be protected for making false reports to a government body.

493. Mrs. Hodges informed Mr. Sevier that he could not file a lawsuit for defamation against Mrs. McKenzie for statements she made to the Board for Mrs. McKenzie, Mr. Rich, and Mr. Ramsey's benefit.

494. Mrs. Hodges' statements to Mr. Sevier violated his first amendment right under the petition clause of the United States Constitution.

495. Mrs. Hodge's acted under color of law on behalf of the state in taking away Mr. Sevier's right to address valid grievance against Mrs. McKenzie, who he had already filed one lawsuit against for defamation and who apparently had not learned her lesson that false statements to third parties constituted defamation.

496. Mrs. Hodges invalid threat infringed on Mr. Sevier's due process rights under the Fourteen Amendment under the Constitution of the United States on gave rise to an action under section 42. U.S.C.A. section 1983.

66

497. Whereas Mrs. Hodges was improperly using the powers of her office to antagonize Mr. Sevier for reporting Mrs. McKenzie and Mr. Ramsey in May 2009 to the police in over violation of the Tennessee Anti-Slapp statute, she could not acknowledge that Mrs. McKenzie could be held liable for her verifiable false statements to the Board.

498. Mr. Sevier did not file a defamation lawsuit against Mrs. McKenzie and Mr. Rich because Mrs. Hodge's used her powers to take this right away in a concerted effort with Mrs. Jones, Mrs. McKenzie, and Mr. Ramsey.

499. Mrs. Hodges and Mrs. Jones were misusing the powers of their office, acting under the color of law, and using the Board for an end which was not contemplated by the Tennessee Supreme Court when it created the Board.

500. On December 9, 2010, Mr. Sevier asked Mrs. Rogers to work out a temporary visitation plan with him pursuant to Judge Smith's order. She refused to do so in bad faith.

501. On January 1, 2011, due to Mr. Sevier's inability to get relief from Judge Smith and Mrs. Rogers' inexcusable cooperation, Mr. Sevier decided to take the advice of a Texas attorney at the Family law center and take a valid self help legal method to rescue his abducted son from the grips of his toxic in laws to return his child, John Sevier, to the great state of Tennessee.

502. As he attempted to leave the state with his child, his father-in-law assaulted him. Mr. Sevier responded with proportional force in self defense and under the transferred right of self defense to protect his son. Mr. Sevier's incredibly wealthy father-in-law made a false report to the police, which caused Mr. Sevier to be wrongfully arrested.

67

503. On January 3, 2011, Mr. Sevier appeared pro se before the Honorable Judge Fields in Harris County and argued that if the statements in the police report were taken as true and if the Court took judicial notice that a parent has superior rights to his child under the 1st, 5th, 9th, and 14th amendments of the Texas and United States Consitution, then charges should be dismissed.

504. The Honorable Judge Fields agreed entirely. He dismissed the false charges and insinuated that if anything, the father-in-law should have been arrested and prosecuted.

505. Both District Attorney Muldrow and Judge Fields signed an order dismissing the case. See Exhibit.

506. Despite the dismissal and Judge Field's findings in open Court on January 3, 2011, Mrs. Rogers filed for a restraining order against Mr. Sevier on January 4, 2011 on behalf of his wife and child. The hearing was set on January 14, 2011.

507. Upon information and belief, around this time, Mrs. Rogers was in communication with Mrs. McKenzie, strategizing about the ways to prejudice Mr. Sevier in these contemporaneous lawsuits.

508. At the hearing on January 13, 2011, Mrs. Rogers began to question Mr. Sevier about the pending Board proceedings against him. Mr. Sevier strongly objected to this improper line of question, which was prohibited under Rule 9 of the TN Supreme Court.

509. Judge Smith, consistent with his past pattern of bias, allowed Mrs. Rogers to bring into evidence the Board proceedings into evidence.

510. Because Mrs. McKenzie and Mrs. Rogers were acting in tandem, during the middle of the hearing on the unnecessary restraining order, Mrs. McKenzie's authorized agent served Mr. Sevier with Mr. Rich's instant lawsuit during a five minute recess.

511. This was not coincidental but meant to send Mr. Sevier a message of intimidation.

512. At the end of the hearing, Judge Smith made a ruling terminating Mr. Sevier's custody rights to his child in part because of the pending ethics complaint that was allowed into evidence.

513. In doing so, the ulterior purpose for which the Board action was originally constructed by Mrs. McKenzie, Mr. Ramsey, and Mrs. Jones was fulfilled.

514. Mr. Sevier has a fundamental Constitutional Right to parent his son, which was taken away from him in part because of Mrs. Jones, Mrs. McKenzie, Mr. Ramsey, ADA Jackson, ADA Sexton, and Mrs. Hodges joint force dishonest efforts to use the Board to prejudice him in civil proceedings.

515. This taking of Mr. Sevier's fundamental Constitutionally protected civil liberty to parent his son occurred by individuals acting under the color of law or conspiring to act under the color of law which gives Mr. Sevier a valid cause of action under 42 U.S.C.A section 1983.

516. Additionally, Judge Smith elected to impose a needless restraining order on Mr. Sevier in part because of the Board's frivolous action against him accomplishing the ulterior purpose for which the proceedings were designed.

517. In doing so, the ulterior purpose for which the Board action was originally constructed by Mrs. McKenzie, Mr. Ramsey, and Mrs. Jones was fulfilled.

518. Mr. Sevier was prejudiced in civil proceedings because Mr. Ramsey and Mrs. McKenzie had compelled Mrs. Jones to act under the color of law to produce a knowingly invalid ethical complaint.

519. This gave rise to a violation under 42 U.S.C.A section 1983.

520. On February 15, 2011, Mr. Sevier emailed Mrs. Jones the following:

Hey Mrs. Jones, I just wanted to simply ask if there was any way the petition against me could be called off before I launch a small version of "World War III" over here. I mean you should know me well enough by now that I will not admit to something that I did not do - that would be violation of my integrity if anything. I am definitely not afraid of the petition but of the wake that my efforts to defeat.... I would much rather work on positive battles. There is not sufficient probable cause for this petition and it came about for ulterior purposes to impact my lawsuits against Mr. Ramsey. Without getting into it to much the petition is a per se violation of the Anti Slapp statutes. It is classic abuse of process to influence civil lawsuits and reprisal. Bringing it has already opened the door to liability for parties I'd prefer not to fight. I just figured I'd ask before I join as counsel and start doing my duty to protect the integrity of the Nashville Bar by responding in opposition. I do want to thank you because during the deployment I was able to help hundreds of Soldiers and families in Tennessee on a pro bono basis, as I promised you I would in November 2010. A large part of what sustain my drive to do so was so that I could come back and tell you that. Of course, I was a beneficiary from the satisfaction of helping others with no expectation of a return. I hope your well, I just figured I'd just simply ask before I begin. Thanks so much. Chris

521. On February 17, 2011, Mr. Sevier emailed Mrs. Jones and Mrs. Hodges:

This is a notice of appearance to appear as cocounsel with Mr. Griffin on your frivolous case against me. I take it that you rejected the first settlement offer. I am asking that you strike your petition because it is a violation of the Anti-Slapp Statutes and constitutes malicious prosecution and abuse of process. Your petition is reprisal because I reported Mr. Ramsey and Mrs. McKenzie to the police on May 29, 2009 and District Attorney's office on June 2, 2009 for crimes and misconduct that was actually supported by substantial probable cause embodied in audiotapes. Your case is also reprisal for my August 3, 2009 bar complaint against Mr. Ramsey and Mrs. McKenzie that Mrs. Jones improperly dismissed without even investigating because of her overwhelming bias. Your case is unequivocally an abusive retaliation for my pro se lawsuit against Mr. Ramsey and Mrs. McKenzie that was filed on May 28, 2009. Your petition is clearly intended to give other parties an advantage over me in civil proceedings in the same way that a criminal trial could be improperly filed to influence a civil proceeding. You know or should have known this to be true and foreseeable. Your petition and oppressive investigative efforts have constituted classic obstruction justice and witness intimidation already in legitimate trials. Your investigation did thwart justice in the criminal trial against John Rich because it caused me to have to accuse ADA Jackson and ADA Sexton of making misrepresentations about the meeting on June 2, 2009. This ultimately impacted the quality of ADA Welch's representation that was devoid of zeal concerning the assault charge, which ultimately allowed Mrs. McKenzie could sue me for malicious prosecution. It was not mere coincidence that that the timing of your petition coincided with the timing of her complaint on behalf of John Rich in November 2010.

Its no secret that Mr. Ramsey and Mrs. McKenzie have been behind the Board's action from the inception, which Mrs. Jones at first tried to deny, knowing that this was true. For you or Mrs. Jones to even begin to suggest that the Board has not been used by Mr. Ramsey and Mrs. McKenzie is laughable. I can appreciate test of my character, even groundless ones, but when those unwarranted test spill over into real trials and pervert justice in other civil cases, I have problem with it. This was foreseeable by Mrs. Jones and yourself, which I believe directly puts your character at issue and exposes you to liability along with Mr. Ramsey and Mrs. McKenzie for abuse of process since the ulterior purposes are being accomplished in other venues. Your petition has harmed my diligent efforts to gain employment with multiple U.S. Attorney Offices after returning from combat, which interferes with my ability to reconcile with my wife. Mrs. Jones falsely accused me of not being truthful about my deployment, unpatriotically using my military service against me, which is prospectively actionable through the civil division of the U.S. attorney's office, which I will present to them. The claim has been preserved under the tolling of the statute of limitations under SCRA. The Board's petition has been used in a civil proceeding against me by Helen Roger's which adversely impacted my child custody rights, accomplishing the one of the malicious and ulterior purposes by which it was originally designed by Bill Ramsey. Mr. Ramsey and Mrs. McKenzie have been making false statement to you and Mrs. Jones from the inception and Mrs. Jones and you knew or should known that these statements were completely untrue. You and Mrs. Jones have spent about as much time investigating into the truthfullnes of Mr. Ramsey's obviously self serving and false allegations as ya'll did in investigating my legitimate August 3, 2010 complaint against them, which was zero. I have an ethical duty that is greater than both of you which prevents me from sitting back and watching you reduce the Nashville Justice System to a popularity contest. To suggest that Mrs. Jones is not biased in favor of Mr. Ramsey is disprovable by simply reading the news before even reviewing the mountain of evidence that proves this: http://www.bizjournals.com/nashville/stories/2010/01/25/focus1.html.I have never smoked a cigarette nor taken any illegal drugs. I rarely drink and have no vices, but what I do have a problem with is bullies in places of power who pervert justice. The malicious plan between the District Attorney's office, Mr. Ramsey, Mrs. McKenzie, and yourself will be exposed to the general public, all of you will be brought to trial to answer for this class abuse of process, unless this nonsense stops immediately. You are supposed to be the gatekeepers of the Nashville Justice system and have instead used the powers of your office to protect one of your own at the expense of Justice - all because of immoral favoritism. The rule of law should control and no one should be above it – including Mrs. Jones, Mr. Ramsey, and yourself. I am not afraid of any of the Board, but I am terrified at the thought of justice system that is based on the principle that the ends justify the means. That is how Iraqi Courts work that are controlled by the Taliban. Therefore, my first settlement offer is that you reretire this retaliation case, like you did in March 26 before I filed a lawsuit against all of you. My case is already ripe. I do not have to wait. Prosecutorial immunity will not protect either of you or Mrs. Jones, as I bring you to accountability before a jury for playing favorites. I have an ethical duty to promote the rules of professional responsibility and integrity of the bar in spite of the misuse of the powers of your position, which

the evidence shows that you and Mrs. Jones have knowingly allowed.I request that this action be transferred to another venue because your connection with Mr. Ramsey and the presumption of bias is too insurmountable. If it is even necessary that I file a comprehensive motion to that effect I will be glad to. I will not quietly allow the combine efforts of the District Attorney's office, Neal & Harwell, and the Board to punish me for doing my duty to report crimes, unethical conduct, and demand civil justice. I don't expect a gold star, but I will tolerate reprisal. This is by no means the first time that I have been the subject of malicious reprisal for whistle blowing against people in places that are higher than any of you. But in like my other case that is before the Pentagon, I hope to encourage severe checks and balances over the Board so that this kind of nefarious "home cooking" stops, as it applies to young lawyers entering into the legal field in Nashville. I am working on the complaint now, if I finish, its filed. I would much rather spend my time on more productive battles but will not sit her and allow you to vicariously bully me for the benefit of Mr. Ramsey and Mrs. McKenzie. The Nashville Bar is supposed to be self regulating so my warning is sufficient. Lawyers are supposed to offer settlement offers before filing a civil complaint. So, that is my offer.

522. Upon information and belief, Mrs. Hodges replied to Mr. Giffin, complaining about the comparison to the Taliban. In reply Mr. Sevier emailed Mrs. Hodges the following:

John said that you and Nancy did not like my Taliban comment. But unlike anyone involved here, I was in Iraq risking my life to work with the US attorney's office and 3rd ID in Iraqi Court's to help establish the rule of law so I think I more than qualified to make that remark. See Below. I expect the Nashville Justice system to be based on the rule law and that includes Board. So, I think I am qualified to make that comparison in good faith. Also, as someone who in charge of investigations, the pleading I provided you in the last email should give you probable cause to investigate into whether Mrs. McKenzie and Mr. Ramsey have been making false statements to complete action from the inception. But the problem is that the investigators have never been neutral from the start. How that is not blatantly obvious is beyond me because of my experience I guess. I'm going to attached Nancy Jones to these emails because lets be honest, she allowed all this because of bias any way and is more of prospective Defendant than you are Mrs. Hodges who was not brought into this campaign until January 24, the same day that the article about her and Mr. Ramsey was published, which I find to be more than a coincidence and so would a reasonable juror at a trial for abuse of process now that ulterior purposes have been accomplished through initiatives that should have been stop in light of my first response to your July 14 inquiry which directly dealt with my reporting Mr. Ramsey, Mrs. McKenzie, Mr. Rich to the police, which raises the immediate presumption that you have been used as reprisal for my whistle blowing in violation of the Anti Slapp statute....just by the way.

This morning, 09 Mar 2010, Colonel Stanley B. Harris and I were part of a convoy mission of the Ninewa Province, Provincial Reconstruction Team (PRT). The mission's purpose was for PRT Department of Justice Attorney Abe Martinez, and accompanying JAG officers, to meet with Iraqi Investigative Judge Mohammad Najim at the Tal Kyaf Courthouse north of Mosul, Iraq. Also accompanying us was CPT Cleek, Trial Attorney for the 2-3 ID at COS Marez. The convoy SP time was 0830 with 1LT Carnes of the 1-9/3rd ID serving as Convoy Commander. After the initial wait, for our Iraqi Police escorts, of approximately an hour at the entrance gate into Mosul for COS Diamondback, the convoy proceeded into Mosul at approximately 0935. CPT Cleek, 1LT Sevier, and I were in back of a MaxPro MRAP with SGT Rodriquez. Our vehicle was the second vehicle in the four security convoy which was accompanied by an Iraqi Police escort vehicle in the front of the convoy crossed through a major intersection approximately 1/2 mile south of the large, multi-domed Mosul Mosque. Suddenly, at approximately 1000, the MRAP began swerving, taking evasive measures while the members of the crew shouted, "RKG, RKG, RKG!" The driver, TC, SGT Rodriquez, and Gunner (as well as personnel in the MRAP following us) saw some young boys on the left hand side of the major street distracting the convoy with obscene gestures and screaming, while on the right hand side of the roadway, a young boy estimated to be between 12 - 15 years of age, threw an RKG bomb at our MRAP. Fortunately for us, the RKG had its parachute deployed and this seemed to foul the intended path of the projectile. It was estimated by our MRAP crew that but for the parachute catching the wind the insurgent's throw would have sent the RKG inot the right side of our vehicle. As it was the RKG missed our MRAP and hit the street just behind our MRAP and in front of the MRAP behind us. Additionally, the RKG did not explode although the pin had been pulled. The weight of the evidence shows that the intent of the combatant was premeditated murder, while lying in wait.    The incident was immediately radioed in by the MRAP crew. Among the witnesses in the third MRPA (the truck behind us) was PRT Department of Justice Attorney Abe Martinez who saw the entire event personally. None of the convoy personnel were injured in the incident. No fire was returned by our vehicle since the gunner's weapon was pointed the opposite direction and the assailant ran away as soon as he threw the RKG. After the evasive manuevers, the decision was made to continue the mission, and we proceeded on to the courthouse and met with Judge Najim.      I am preparing to convoy tomorrow to COB Q-West to join the First Squadron. I can be reached at mark.c.sevier@us.army.mil or through NIPR at Sevier, Mark C 1LT USF-I 278 RFS Judge Advocate, or DSN: 318-821-6609 (Marez) & (318) 827-6004 (Q-West). -- End of Statement--


523. On February 18, 2011, Mr. Sevier filed an amended answer/complaint in his

domestic case and included the torts of malicious prosecution with the intent of adding

Mrs. Rogers and his father-in-law to the proceedings.

524. During the hearing Mr. Sevier was served with pleadings in his case against Mr. Ramsey, Mrs. McKenzie, and Mr. Rich as a bad faith reminder to him that they were working in tandem with Mrs. Rogers and to imply that the Forth Circuit was being used as a back door chamber of reprisal for his lawsuit against them.

525. Following an approximate 18 minute recess to review the complaint, Judge Smith ordered Mr. Sevier to provide Mrs. Jones with a copy of his amended complaint because he alleged that Mr. Sevier had stated that he was corrupt in his complaint.

526. This finding was inaccurate.

527. Mr. Sevier never plead that the Honorable Judge Smith was corrupt. To the contrary, Mr. Sevier pled that Judge Smith was biased. Mr. Sevier, shortly thereafter, filed a motion to recuse Judge Smith supported by a variety of insurmountable grounds.

528. Mr. Sevier promised that Judge Smith that he would deliver a copy of his complaint to Mrs. Jones the following Monday on February 21, 2011.

529. On February 21, 2011, Mr. Sevier was unable to deliver the complaint to Mrs. Jones because it was Presidents day.

530. On or around February 22, 2011, Mr. Sevier delivered a copy of the complaint to Mrs. Jones.

531. Around early March 2011, Mr. Sevier filed a motion to dismiss Mr. Rich's instant compliant against him in the Second Circuit before the Honorable Judge McCellan, since even if the statements in the complaint are taken as true it is clearly inferable that there was sufficient probable to support the criminal charges in light of the voicemail, video tape, and the findings of the investigative detective concerning a disturbance at the Spot

that was apparently so violent that Mr. Ashley had to be escorted out by Mr. Rich's

security. (See the Original Complaint). Special Masters Nicoles attended the hearing.

532. At a hearing on March 4, 2011, over Mr. Sevier' objection, Mrs. McKenzie brought

up the fact that Mr. Sevier had an ethics complaint filed against him to support her

response in opposition to prejudice Mr. Sevier's interest.

533. Mrs. McKenzie falsely asserted that she and Mr. Ramsey did not take any

affirmative steps to cause the ethics complaint to come about which was a patently untrue

and published without a good faith basis.

534. Bizarrely, Mrs. McKenzie implored the Court to admonish Mr. Sevier for having

alleged that in June 2009 he alleged that he sincerely believed that she, Mr. Ramsey, Mr.

Rich, and Mr. Oswald were under investigation by the state.

535. Mr. Sevier refused to change his belief on this matter when confronted with the

question of its truthfulness. None of those matters had anything to do with the motion to

dismiss that was at bar.

536. Mrs. McKenzie used the frivolous board complaint to prejudice Mr. Sevier's

personal interest in civil proceedings which was the ulterior purpose for which it was

generated by Mr. Ramsey, Mr. Rich, Mrs. McKenzie, Mrs. Jones, Mrs. Hodges, ADA

Sexton, ADA Jackson, and ADA Sexton.

537. Mrs. McKenzie used the board proceedings on behalf of Mr. Rich and Mr. Ramsey

pursuant to their ongoing concerted efforts to use the Board as a sword in civil

proceedings.

538. Upon information and belief, Mr. Sevier's motion to dismiss was not granted in part

because Mrs. McKenzie used the frivolous board proceedings against him. She was

using the Board's proceedings she helped produce on a false basis to taint the case there

by casting Mr. Sevier in a false light.

539.  The frivolous Board proceedings came about because of the dishonest concerted

efforts of ADA Jackson, ADA Sexton, Mrs. McKenzie, Mr. Ramsey, Mrs. Jones, and

Mrs. Hodges, who were either acting under color of law as members of the board or as

license attorneys by the state or who caused others to act under the color of law for their

benefit.

540.  Consequently Mr. Sevier's right to due process under the Fourteen Amendment was

willfully violated giving rise to a valid cause of action under 42 U.S.C.A 1983.

541.  This also adversely impacted Severe Records rights for the same reasons.

542.  Mr. Sevier is an authorized agent of Severe Records LLC.

543.  On April 3, 2011, Lieutenant Sevier was given a counseling statement at

Regimental Headquarters by his Superior Officer Captain Brown, who ordered him not to

engage in any more legal assistance, since the Army had discovered that there was a

pending ethics complaint against him.

544. This state taking violated Mr. Sevier's Constitutional Rights.

545.  This caused Lieutenant Sevier to feel unwarranted shame and embarrassment.

546.  In the Military, Officers, especially Judge Advocates, are held to disciplinary

standards that are substantially hire than attorneys governed by the rules of professional

responsibility and your average citizen.

547.  On April 5, 2011, at 7:20, Mr. Sevier emailed Mrs. McKenzie the following:

> Hey, were are we at with the Chance hearing? I've been out of town.  Also, in all
> seriousness, I would strike the complaint against Jared and I because when I file what
> I'm about to file, all of your codefendants (an you know I'm adding you) are going to
> look to you and realize that your arrogance is the primary source of all the misery

they are going to suffer through the legal system as I begin tenaciously litigating the case in the interest of justice. Just for the record, I would like you to know that I would prefer to be working in the recording studio then litigating against the lot of you, but my commitment to integrity and the general welfare of the Nashville Bar compels me to honor my legal duties in the interest of justice. Chris

548. At 9:11, Mrs. McKenzie retorted: "Chris, I am aware that you have been out of state. The hearing is set for April 8. Please stop sending me threatening emails."

549. At 9:40, Mr. Sevier replied:

"It would make perfect sense that you knew I was out of town because you and Mrs. Rogers have been conspiring under a malicious plan to make me appear as threatening for some time now and your latest email confirms that rather conclusively. Cyndi, as a lawyer, you of all people should know that my warning or promise to take valid legal recourse against you is not an illegal or improper threat. The courts are designed for individuals who have legitimate concerns to get justice. So, if I threaten to report you to the board, like I did back in October, this is not an illegal act - this is my right and duty. If I promise to hold you and others strictly accountable for your inescapable and undeniable corruption at a jury trial, this is not an improper threat, this is my right under the Tennessee and United States Constitution under whichever legal theory I might be filing under. My warnings to you are meant to serve as favor so that you will have an opportunity to avoid the inevitable load of justice I will bring your way through our almighty legal system. The rules encourage settlement offers before the filing of a civil complaint. You know that. So, my offer is drop Rich's ridiculous lawsuit now or prepare for a counter suit that names you and hole lot of other folks, who are going to realize that your selfish agenda got them named as defendants because that's what the evidence shows. I hate it just as much as you do because I'd rather be in the studio producing records. But I just work here."

550. On April 5, 2011, Mr. Sevier sent Mrs. Hodges the following email:

"I just wanted to let you know that yesterday the military ordered me to no longer provide free legal assistance to Soldiers in the 278th because their is a pending case that before the Board of Professional Responsibility against me. There can be no question that the pending case is prejudicing not only myself, but Soldiers of the 278th ACR. If you want to investigate this you may by contacting CPT Brown at 865 924 1421. It remains my position that the evidence shows that the board action is void of probable cause. The evidence strongly demonstrates that the Board action was brought as reprisal for my valid attempts to hold Mrs. McKenzie and Mr. Ramsey accountable through the state, the Board, and in civil court. This is a gross misuse of the powers of your office. I just wanted to further put you on notice of these realities. I ask that you strike the board's ridiculous complaint that is unquestionably prejudicing more than just myself. thanks,

551. On April 6, 2011, Mrs. Hodges responded:

> Mr. Sevier: The Board is not going to strike the complaint against you. You are obviously permitted to file any dispositive motions you find appropriate and we will respond to them accordingly.

552. Mr. Sevier does not have sufficient time or the resources to file "dispositive" or any other motion that case given the other maliciously filed civil litigation he is entrenched in.

553. Upon information and belief, sometime before April 7, 2011, Mr. Rich and Mrs. McKenzie, and Mr. Ramsey accomplished their original goal of May 22, 2009, they bribed Mr. Ashley to switch sides and recant testimony.

554. This was not the first time they attempted to bribe Mr. Ashley in privacy.

555. However, this time they were successful. Mr. Ashley has been worn down by the proceedings, and he does not have the resources or disposition to resist the continuous intimidation.

556. Upon information and belief, Mr. Ashley accepted the bribe and Mr. Rich's promise to back off in litigating against him in exchange for taking false positions that support Mr. Rich's legal interest, against Mr. Sevier who posed a substantial threat to his legal interest.

557. On April 7, 2011, Mrs. McKenzie deposed Mr. Ashley at which time he made a volley of omissions that inconsistent with the facts and evidence that supported Mr. Rich's legal interest.

558. Upon information and belief, Mr. Ashley falsely alleged at deposition that when he signed the affidavit on March 23 that was filed in District Court, he had no earthly idea it was for the Severe Records case, which is contrary to the all of the evidence.

559. Upon information and belief Mr. Ashley made statements that were inconsistent with the ones in his attested to affidavits because he had finally been intimidated into switching to Mr. Rich and Mrs. McKenzie's side so that they could gain unfair advantages in Mr. Sevier and Severe Records litigation against them in Williamson County and in the case before the Sixth Circuit Court of Appeals.

560. On April 8, 2011, Mrs. McKenzie appeared on behalf of Mr. Rich in the 8th Circuit against Mr. Smith, who Mr. Sevier represent. The case at issues was one that had been appealed from General Sessions. The matter at issue was Mr. Rich's motion to disqualify Mr. Sevier. Once against Mrs. McKenzie and Mr. Rich were using the rules of professional responsibility to attempt to prejudice him. The hearing related to Mr. Rich's case against Mr. Smith, a Severe Records recording artist, for an order of protection regarding a poetic rap song that Mr. Rich alleged was so diabolical that it made him feel in imminent danger.

561. At the hearing, Mrs. McKenzie inappropriately repeatedly appealed to the fact that Mr. Sevier had a board action pending against him.

562. Mr. Sevier objected to Mrs. McKenzie using the board matters against him in civil proceedings pursuant to Supreme Court Rule 9, but he was overruled.

563. Judge Solomon allowed Mrs. McKenzie to raise these matters, which was maliciously created by the concerted efforts of ADA Jackson, ADA Sexton, ADA Welch,

Mrs. Jones, Mrs. Hodges, Mr. Rich's for the purpose of disadvantaging Mr. Sevier and Severe Records in civil proceedings as a form of reprisal for reporting.

564. Judge Solomon ruled against Mr. Sevier despite the fact that (1) he presented a conflict of interest form signed by Mr. Smith after full disclosure; that (2) he reasonably believed that his representation of Mr. Smith would not be adversely impacted due to his contemporaneous litigation against Mr. Rich because Mr. Smith and Mr. Seiver's interest were mutually consistent and parallel; that (3) it was as necessary for him to be called as witness in that case as was for him to be called in the general sessions trial, which never occurred; and that (4) even if he was called, the substantial hardship exception to rule 3.7 applied because of Mr. Smith's financial condition he could not have afforded an attorney other than Mr. Sevier, who had the same capability of helping him prove his legal theory that Mr. Rich's lawsuit was purely retaliatory harassment.

565. The use of the pending board action caused Mr. Sevier's constitutional rights to be violated because the disqualification was based on the frivolous petition composed by Mrs. Jones and Mrs. Hodges.

566. Mrs. Jones and Mrs. Hodges acted under the color of law intentionally not conducting an adequate investigation into the truthfulness of the allegations to generate a petition so that Mrs. McKenzie and Mr. Ramsey could use it as a sword to punish Mr. Sevier for reporting their attempted bribery of Mr. Ashley in May 2009 to the police and for reporting their national display of misconduct on June 2, 2009 to the Board.

567. These individuals acted under the color of law to cause Mr. Sevier the right to make a living by practicing law through the disqualification, which violated his Constitutional Rights. 42 U.S.C.A. section 1983.

568. Additionally, at the hearing Mrs. McKenzie announced that she deposed Mr. Ashley on April 7, 2011 and that he took positions that were inconsistent with his original ones.

569. Mrs. McKenzie effectively stated that Mr. Ashley had converted to Mr. Rich's side despite his former testimony affixed in multiple affidavits.

570. Mrs. McKenzie promised to report allegedly new wrongful acts of Mr. Sevier to the board out of information she learned from the deposition of Mr. Ashley.

571. Mrs. McKenzie once again admitted that she was going to use the board on behalf of herself and Mr. Rich to prejudice Mr. Sevier pursuant to an ongoing invalid legal strategy to abuse process.

572. On April 21, at 4:23 PM, Mr. Sevier emailed Mrs. Hodges:

"Krisann, I have a question: "Did you or Mrs. Jones even bother with questioning ADA Jackson at any point." Actually, you don't have to answer that because I already know the answer. The answer is that neither of you are advocates of the truth, your advocates of individuals you think are important, which is a great way to impeach the bar's integrity, not build it up. I have an affidavit of Mrs. Harrison who was at the meeting with ADA Jackson on June 2 that I would like to drop off, if permissible. Additionally, I do not want to violate rule 4.2, and I do not know if you are going to have someone else represent you or if you'll follow my lead and proceed pro se. Accordingly, I ask that you recuse yourself voluntarily and that this case be reassigned to a board outside the state of Tennessee. I also ask that the proceedings be stayed until the resolution of the case in District Court on these matters. Moreover, the military is possible ordering me to Fort Benning GA from May 8 until June 20 but its not confirmed. I can go in May or October. I am attempting to interstate transfer to 20th or 5th Special Forces Group, and I might be providing grounds under SCRA to retire the case as it once was in March 2010. I hope like Mrs. Jones you don't question my integrity when it comes to military matters or adopt service discrediting positions for your own benefit. Thanks, Best, Chris

573. At 6:29 PM, Mrs. Jones responded:

Mr. Sevier, you continue to misunderstand the procedural posture of this case. Ms. Hodges and I represent the Board of Professional Responsibility, an agency of the Supreme Court, which has authorized the filing of a Petition for Discipline against you. A Hearing Panel has been appointed to hear the Board's evidence in this case. Neither Ms. Hodges, nor I, are parties to this litigation and as a result, we will not be proceeding pro se, or otherwise, except as counsel for the Board.

Ms. Hodges and I decline to agree to your informal requests. Supreme Court Rule 9 and the Tennessee Rules of Civil Procedure govern these proceedings. As Ms. Hodges has

previously advised you, if you have motions to make, please file them and they will be presented to the Hearing Panel for decision. We will oppose any motion to have Ms. Hodges or myself recused, the proceedings moved to a board in another state, or to have the proceedings stayed again. Similarly, since the Tennessee Rules of Evidence apply in disciplinary proceedings, an affidavit will not be admissible in this matter. Supreme

574. At 7:19, Mr. Sevier replied putting Mrs. Jones on notice that he was proactively attempting to sue her and Mrs. Hodges in Federal Court concerning these matters:

When I ask are you proceeding pro se I am referring to the federal law suit against you both in your personal capacities in the middle district for abuse of process. I understand that you abused the powers of your office without probable cause for an ulterior object that I intend to present the matter to a jury. Your office was not designed to be used in manner in which it has been with very real civil cases impacted by what amounts to knowingly false none sense for the benefit of Mr. Ramsey and Mrs. McKenzie. And how could I possible be expected to know the rules of a tribunal such as this when you deliberately and knowingly brought frivolous charges against me without doing an adequate investigation into the truthfulness of matter regarding a controversy that amounted to my first case representing a third party ever. Who does that? I can tell you who: someone with a improper agenda that is not predicated on a good faith basis. You are not supposed to be on Bill Ramsey and Cyndi McKenzie's side just because they work at a blue chip firm. Your supposed to be on the side of the truth.

575. Mrs. Jones replied: "What are you referring to? I have never been served I any federal court action brought by you… Perhaps like your previous experience with opposing counsel, Ms. Hodges and I will not be responding to emails that are not relevant to the Petition

576. Mr. Sevier returned:

Mrs. Jones the very idea you would once again take up for my opposing counsel only further reinforces the basis for which you are being added. You can thank the opposing that you refer to in part for that. If you want to know about my Federal lawsuit against you and Mrs. Hodges, just talk to these opposing counselors, since the evidence suggest you and Mrs. Hodges have done that pretty regularly. I kept asking you both to stop.In fairness I've got to submit my rule 14 motion, but you will be added, along with ADA Jackson, ADA Welch, Mrs. McKenzie, Mr. Ramsey, and ADA Sexton as counter codefendants with John Rich. I actually like all of these people, but you know I've got way too much integrity to sit back and allow this kind of abuse of process to prevent justice. The case was originally filed against me by John Rich, through Mrs McKenzie in November for malicious prosecution. I removed the case to Federal Court on Friday, which has been assigned to Chief Judge Campbell. I would give you the docket number but Im at my parents lake house for the week producing records. Your welcome to talk to John Griffin.

577. Mrs. Jones replied: Mr. Sevier, are you suggesting that Mr. Griffin represents you in the disciplinary matter? He has told us that he does not.

578. Mr. Sevier offered:

Just talk to him. He is willing to be like a buffer. Kind of like how Mr. Campbell was regarding settlement back in the winter of 2009. So, I would advise that you do as you should have done from the inception and stop fishing for violations and search for the truth. In addition to that the Board failed to grant his motion to withdraw, so you tell me. Importantly, you can talk to me all you want, but your statements are of course an omission in the Federal Court proceedings. If you and Mrs. Hodges retain counsel, then I cannot talk to you.

579. Despite these communications on May 3, 2011, Mrs. Jones uses the powers of her office for the benefit of Mrs. McKenzie to gain leverage in civil litigation against Mr. Sevier and sends him two threatening inquiries: The first one stated:

"This is to inform you that a complaint of disciplinary misconduct has been opened related to an allegation discovered during our investigation of your pending matters. In a recent deposition conducted on April 7, 2011 by Cynthia McKenzie in the matter of Rich v. Ashley, your former client, Jared Ashley, testified that you filed affidavits which had not been reviewed and then signed by Mr. Ashley. I am attaching a portion of the transcript for your review. Mr. Ashley further testified that he was unaware that you were also involved in a Federal lawsuit against John Rich and that you not only submitted an affidavit that he did not personally review and sign, but also failed to advise him that you were a party in litigation against Mr. Rich....Please provide a concise statement regarding your conduct in this matter within ten (10) days of your receipt of this letter....Your failure to timely respond to this complaint of misconduct will result in the filing of a notice of petition for temporary suspension."

580. This inquiry caused Mr. Sevier to feel intimidated, and it interfered with his ability to litigate the instant case. Mrs. Jones sent this inquiry knowing that the evidence showed that in May 2009, Mrs. McKenzie, Mr. Ramsey, Mr. Oswald, and Mr. Rich attempted to bribe Mr. Ashley. The weight of the written evidence shows that Mr. Ashley was fully aware of Severe Records Federal litigation and Mrs. Jones should know that if Mr. Ashley did in fact switch sides, he was most likely bribed by the same attorneys whose interest she has been advocating from the inception of these matters.

581. Also as a retaliation, on May 3, 2011, Mrs. Jones also sent Mr. Sevier several other similar ethical inquires all of which related to frivolous lawsuits that he was having to

defend himself in out of necessity. In one of the inquires she asserted: In your amended [counter complaint], you make several accusations that Judge Smith was biased towards you due to your "controversial case against Bill Ramsey and Neal and Harwell." Explain your factual basis for making these statements about Judge Smith.

582. Mrs. Jones used the powers of her office to attempt to obstruct justice on behalf of Neal & Harwell, knowing that she was going to be a codefendant with them in a lawsuit for violating Mr. Sevier's Constitutional Rights in pursuing an agenda that was not supported by the facts and law. Mrs. Jones threats caused Mr. Sevier to feel intimidation and duress, and interfered with his ability to litigate on going civil cases.

583. A substantial fundamental problem here is that the Board of Professional Responsibility has zero checks and balances, acting with impunity to reek havoc in on going civil lawsuits. The Board serves an important function, but under Mrs. Jone's charge is clearly being used to foster justice based on elitism, reducing the Bar to a popularity contest, not a place were the facts, law, and merits control.

**ABUSE OF PROCESS**

584. Mr. Sevier and Severe Records refers to and incorporates by reference paragraphs 1 through 571, as though fully set forth herein.. Mrs. McKenzie, Mr. Rich, Mr. Ramsey, ADA Jackson, ADA Welch, ADA Sexton, Mrs. Jones, and Mrs. Hodges filed or caused to be filed an ethical petition that lacked a good faith basis and probable cause.

585. They knew or should have known that the allegations plead in the complaint were supported by insufficient or patently false statements.

586. The conspirators had an ulterior motive in making every effort to drum up ethical charges as a reprisal for Mr. Sevier's reporting Mr. Ramsey, Mr. Rich, and Mrs. McKenzie to the police on May 29, 2009 and Mr. Ramsey and Mrs. McKenzie to the board on June 2, 2009.

587. The conspirators ulterior purpose was realized in the following ways: (1) on January 13, 2011, Judge Smith in appropriately allowed the ethics complaint to prejudice Mr. Sevier's Constitutionally protected interest to parent his son in civil court; (2) on January 13, 2011, Judge Smith allowed an unnecessary restraining order to be placed on Mr. Sevier in civil court because Mrs. Rogers was allowed to introduce into the record the existence of the frivolous ethics complaint that was specifically designed for the purpose of prejudicing Mr. Sevier in his civil proceedings; (3) on March 4, 2011, Mrs. McKenzie introduced the existence of the frivolous ethics complaint into evidence over the objection of Mr. Sevier and Severe Records, which was used to prejudice their interest in the civil proceedings causing, in part, their motion to dismiss to be denied; (4) on April 8, 2011, Mrs. McKenzie introduced into evidence in the eighth circuit the existence of the ethics complaint to cause Mr. Sevier to be disqualified from representing Mr. Smith, and (5) the military using the ethics complaint as grounds to enjoin LT Sevier from providing legal assistances to Soldiers in the 278th.

588. These purposes were achieved through the use of the justice system for which it was not originally designed.

589. These conspirators had a personal and financial incentive to act on one another's behalf as a matter of quid pro quo.

590. They look out for one another's interest – taking care of their own – as part of an invalid and unethical design that violates the fabric of the American Jurisprudence. Instead of advocating truth and justice, they use their license to promote favortism and double standards.

591. Mrs. McKenzie, Mr. Rich, Mr. Ramsey, ADA Jackson, ADA Welch, ADA Sexton, Mrs. Jones, and Mrs. Hodges has been intentional, malicious, fraudulent, oppressive, and in bad faith. Their conduct has served to unjustly subject Mr. Sevier to unfounded civil prosecution and undeserved prejudice in civil proceedings and, as a result, Mr. Sevier and Severe Records have suffered financial losses and other damages, including jobs with the Federal Government, lose of rights in the military to help indigent clients, mental anguish and suffering, lose of the right to parent his child, reputation damage in an amount to be proven at trial. Mr. Sevier and Severe Records have also incurred other damages that include, but are not limited to, court fees, attorney's fees, inconveniences, embarrassment.

592. Mr. Sevier and Severe Records are entitled to an award of compensatory and punitive damages, as a result of ADA Jackson, ADA Sexton, ADA Welch, Mrs. Jones, Mrs. McKenzie, Mrs. Hodges, Mr. Rich, and Mr. Ramsey's intentional misconduct. The petition has been used in other ways to prejudice Mr. Sevier unjustly, which will be shown at trial.

CIVIL CONSPIRACY

593. Mr. Sevier and Severe Records refers to and incorporates by reference paragraphs 1 through 593, as though fully set forth herein. Mr. Rich, Mrs. Jones, Mr. Ramsey, Mrs. McKenzie, Mrs. Hodges, ADA Sexton, ADA Jackson, Mrs. Rogers, and

ADA Welch have taken overt action in furtherance of the foregoing agreements and conspiracies, engaging in a myriad of fraudulent and dishonest acts to distort public perception, obstruct justice, cause injury through intentional, reckless, or negligent actions that that injured the Mr. Sevier and Severe Records that caused them loss of income or different kinds of pain and suffering through the lose of protected Constitutional and other rights. Mr. Sevier and Severe Records have been damaged by the overt actions taken, in concert, by Mr. Rich, Mrs. Jones, Mr. Ramsey, Mrs. McKenzie, Mrs. Rogers, Mrs. Hodges, ADA Sexton, ADA Jackson, and ADA Welch, in furtherance of the of the foregoing agreements and conspiracies and is therefore entitled to recover damages, against one or all of the conspirators.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

595. Mr. Sevier and Severe Records refers to and incorporates by reference paragraphs 1 through 594, as though fully set forth herein. Mr. Rich, Mrs. Jones, Mr. Ramsey, Mrs. McKenzie, Mrs. Hodges, ADA Sexton, ADA Jackson, and ADA Welch have engaged in activity that a normal rational person would find outrageous. This outrageous conduct has injured Mr. Sevier and Severe Records LLC. There conduct was especially outrageous given their years of experience and specialized positions in the legal system through the state of Tennessee.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

596. Mr. Sevier and Severe Records refers to and incorporates by reference paragraphs 1 through 582, as though fully set forth herein. Mr. Sevier and Severe Records refer to and incorporates by reference paragraphs _ through _, as though fully set forth herein. The emotional injuries suffered by Mr. Sevier and Severe Records were the

proximate and foreseeable result of Mr. Rich, Mrs. Jones, Mr. Ramsey, Mrs. McKenzie,

Mrs. Hodges, ADA Sexton, ADA Jackson, and ADA Welch's actionable conduct in the

ongoing concerted effort to antagonize and oppress Mr. Sevier as an act of reprisal for

attempting hold Mr. Ramsey, Mrs. McKenzie, and Mr. Rich accountable in multiple

venues. The actionable conduct of these individuals was such that it engendered mental

stress that no reasonable person could be expected to adequately endure. The severe

emotional distress suffered by Mr. Sevier was such that no reasonable person or persons

in a civilized society should be expected to tolerate it.

## EXTREME AND OUTRAGEOUS CONDUCT

597. Mr. Sevier and Severe Records refers to and incorporates by reference

paragraphs 1 through 598, as though fully set forth herein. The conduct of Mr. Rich, Mrs.

Jones, Mr. Ramsey, Mrs. McKenzie, Mrs. Hodges, ADA Sexton, ADA Jackson, and

ADA Welch was atrocious, extreme, outrageous. These individuals conduct was so

outrageous that it clearly exceeds the bounds of decency, making it intolerable in a

civilized community and has resulted in serious mental and emotional injury and

suffering by Mr. Sevier. The fact that these individuals would so grossly misuse the

powers of their position without fear of accountability and lack of checks and balances is

despicably unjust and grossly immoral. These individuals have abused their celebrity and

positions afforded to them by the state of Tennessee.

## RES ISPA LOQUITAR

599. Mr. Sevier and Severe Records refers to and incorporates by reference

paragraphs 1 through 598, as though fully set forth herein A "duty" exists for Mrs. Jones,

ADA Jackson, ADA Welch, ADA Sexton, Mr. Ramsey, and Mrs. McKenzie to act

honestly and to reasonably promote the interest of the integrity of the Nashville bar as a

place of justice based on the truth and merits, not politics and favoritism. These

individuals have a duty to not reduce the Nashville Justice system to a popularity contest

– a good ole boy system. Even if their politics align with Mr. Rich, their actions lacked a

valid basis. As a political figure, public figure, gubernatorial, mayoral candidate, Mr.

Rich has a duty to promote the interest of the integrity of the Nashville Justice system and

not abuse it for selfish ends.

600. These individuals are under a duty to investigate the truthfulness of allegations

before they file a cause of action or cause a cause of action to be filed on a false basis.

This duty was breached. These individuals are under a duty not to use court proceedings

to obstruct justice in parallel or contemporaneous proceedings. These individuals are

under duty to not abuse the powers of their office as reprisal for an attorney like Mr.

Sevier following his duty to report criminal activity that is supported by probable cause

and unethical conduct supported by probable cause.

601. Mrs. Jones and Mrs. Hodges are under a duty not to play favorites and punish

attorneys they are not friends with and protect attorneys who they are. They have a duty

to dispense justice impartially and fairly and not bring invalid complaints, simply because

they can. Mrs. Jones should have recused herself from the outset.

602. A breach of these duties occurred. Each of these individuals acted outside this duty,

or"unreasonably"; and there was "causation in fact"...the result would not have occurred

"but for" the "breach" of this duty; there was actual legally cognizable harm suffered by

Mr. Sevier who did nothing wrong by following his duty to report criminal acts to the

police and misconduct to the board.

603. To the contrary, Mr. Sevier would have been subject to discipline had he not

reported Mr. Ramsey and Mrs. McKenzie's collective efforts with Mr. Rich and Mr.

Oswald to bribe Mr. Ashley in secrecy, which apparently, they were finally able to do, if

Mr. McKenzie's statements on April 8, 2011 before the 8th Circuit are true. This

occurred because there has been no consequences imposed on these individuals.

604. The fact that Mrs. Jones has allowed her office to be used to brutalize Mr. Sevier as

he defends himself pro se in actions where he was wrongfully sued is inherently improper

on its face. Even if Mr. Sevier was not an attorney, he has a Constitutional Right to

proceed pro se and should not be subject to interferences by the Board in the course of

doing so.

## **FIRST CLAIM FOR RELIEF (UNDER SECTION 1983)**

605. Mr. Sevier and Severe Records refers to and incorporates by reference

paragraphs 1 through 603, as though fully set forth herein. Mr. Rich, Mrs. Jones, Mr.

Ramsey, Mrs. McKenzie, Mrs. Hodges, ADA Sexton, ADA Jackson, and ADA Welch

caused a frivolous retaliatory board complaint to issue to prejudice Mr. Sevier in existing

and prospective civil litigation.

606. The frivolous petition was used on January 13, 2011 by in the Forth Circuit to

prejudice Mr. Sevier at a hearing which violated his Constitutionally protected liberty to

parent his child.

607. Mr. Sevier's right to parent his son is a Constitutional liberty protected under the 1,

5th, 9th, and 14th Amendments, as well as the bill of rights. There is good reason why

these rights have been recognized as fundamentally protected rights from the inception of

this County.

608. As a result of Mr. Rich, Mrs. Jones, Mr. Ramsey, Mrs. McKenzie, Mrs. Hodges, ADA Sexton, ADA Jackson, and ADA Welch's concerted unlawful and malicious conspiracy, Mr. Sevier and Severe Records were deprived of liberty without due process of law and their right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983 and 1985.

609. This Court should award Severe Records and Mr. Sevier the reasonable costs and expenses of this action, including attorneys fees, in accordance with 42 U.S.C. sec. 1988.

## SECOND CLAIM FOR RELIEF (UNDER SECTION 1983)

610. Mr. Sevier and Severe Records refers to and incorporates by reference paragraphs 1 through 594, as though fully set forth herein. On March 4, 2011, Mr. Rich, through Mrs. McKenzie, used the bad faith petition on behalf of his conspirators in the Second Circuit to prejudice Mr. Sevier at a hearing on a motion to dismiss, which violated Mr. Sevier's Constitutionally protected right under the First Amendment under the Petition Clause.

611. Mr. Sevier's right to due process under the Fourteen Amendment was willfully violated by the conspirators who acted under the color of law to produce the petition.

612. As a result of Mr. Rich, Mrs. Jones, Mr. Ramsey, Mrs. McKenzie, Mrs. Hodges, ADA Sexton, ADA Jackson, and ADA Welch's concerted unlawful and malicious conspiracy, Mr. Sevier and Severe Records were deprived of liberty without due process of law and their right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983 and 1985, as an adverse

decision was reached on at a hearing, in part, because of their frivolous Board

petition.

613. This Court should award Severe Records and Mr. Sevier the reasonable costs and

expenses of this action, including attorneys fees, in accordance with 42 U.S.C. sec. 1988.

### THIRD CLAIM FOR RELIEF (UNDER SECTION 1983)

614. Mr. Sevier and Severe Records refers to and incorporates by reference

paragraphs 1 through 615, as though fully set forth herein. On April 8, 2011, Mr. Rich,

through Mrs. McKenzie, used the malicious petition on behalf of the Mr. Ramsey and

Mr. Rich to cause Mr. Sevier to be disqualified from representing Mr. Smith which

violated his Constitutional Rights.

616. On April 8, 2011, Mrs. McKenzie asserted at the hearing that Mr. Smith was a

Severe Records recording artist.

617. Severe Records right to due process under the Fourteen Amendment was willfully

violated by the conspirators who acted under the color of law to produce the petition that

caused Mr. Smith's counselor to be disqualified.

618. As a result of Mr. Rich, Mrs. Jones, Mr. Ramsey, Mrs. McKenzie, Mrs. Hodges,

ADA Sexton, ADA Jackson, and ADA Welch's concerted unlawful and malicious

conspiracy, Mr. Sevier and Severe Records were deprived of liberty without due

process of law and their right to equal protection of the laws, and the due course of

justice was impeded, in violation of the Fifth and Fourteenth Amendments of the

Constitution of the United States and 42 U.S.C. sec. 1983 and 1985. T

619. This Court should award Severe Records and Mr. Sevier the reasonable costs and

expenses of this action, including attorneys fees, in accordance with 42 U.S.C. sec. 1988

### FOURTH CLAIM FOR RELIEF (UNDER SECTION 1983)

620. Mr. Sevier and Severe Records refers to and incorporates by reference paragraphs 1 through 602, as though fully set forth herein. In November 2010, Mr. Ramsey falsely reported Mr. Sevier to the Board, alleging that Severe Records settlement offer in the case in the Sixth Circuit Court of Appeals constituted a physical threat.

621. In December 2010, Mrs. McKenzie falsely reported Mr. Sevier to the Board for allegedly making a physical threat to her on October 25, 2010, outside of Judge Robinson's Courtroom.

622. Mr. Ramsey and Mrs. McKenzie knew that their statements were false.

623. Mr. Ramsey and Mrs. McKenzie knew that there reports to the board were false, just as Mrs. McKenzie knew that her report to ADA Sexton on May 27, 2009 against Mr. Sevier and Mr. Ashley for extortion was false.

624. Mr. Sevier sent Mrs. McKenzie a notice of retraction demand in December 2010 for publishing false statements to the board.

625. Mrs. Hodges acting under color of law came to Mrs. McKenzie's aid and threatened Mr. Sevier that he could not hold Mrs. McKenzie liable for defamation, even if her statements to the board were deliberately false.

626. Mrs. Hodges was merely continuing the objective of Mr. Ramsey, Mrs. Jones, Mr. Rich, Mrs. McKenzie to intimidate Mr. Sevier into not holding these individuals accountable for libel that began back in June 2009 before he filed his first defamation lawsuit against them for false accusing him and Mr. Ashley of extortion to lessen the blow to Mr. Rich, after he was arrested, in the national media.

627. In the faced of Mrs. Hodges inappropriate and intimidating threat, Mr. Sevier did not

file another defamation lawsuit against Mrs. McKenzie for their continued and undeterred

publication of dishonest statements to third parties.

628. Consequently, Mr. Sevier's first Amendment Right under the Petition Clause was

violated by Mrs. Hodges, who acted under the color of law to promote the concerted

efforts of Mrs. Jones, Mr. Ramsey, Mrs. McKenzie, Mr. Rich, ADA Sexton, ADA

Welch, and ADA Jackson.

629. The Board picks and chooses what constitutes an Anti-Slapp type suit based on a

wrongful agenda that predicated on favoritism and double standards.

<u>FEDERAL DECLARATORY JUDGMENT 28 U.S.C. § 2201</u>

630. Mr. Sevier and Severe Records refers to and incorporates by reference

paragraphs 1 through 612, as though fully set forth herein.   Severe Records and Mr.

Sevier are entitled to a declaratory judgment their Constitutional Rights were violated

under the 1st, 5th, 9th, and 14th amendments of the United States Constitution.

631. Severe Records and Mr. Sevier are entitled to a declaration that Mrs. Jone's and

Mrs. Hodge's or the Board's petition is Unconstitutional under the overall circumstances.

632. Mrs. Jones and Mrs. Hodges have misused the powers of their office to attempt to

obstruct justice for the benefit of their friends, Mr. Ramsey and Mrs. McKenzie, in gross

violation of Mr. Sevier and Severe Records constitutional rights.

633. Mrs. Jones' actions are unconstitutional because she sending threatening letters to

Mr. Sevier involving matters in which he is proceeding pro se, which is something he

could do even if he was not a licensed attorney.  This Court should find that her actions

and threats violate his First amendment rights under the Petition Clause to access the Courts.

634. This Court should declare that Mrs. Jones and Mrs. Hodges misuse of the board involving pending litigation is unconstitutional because it literally gives the other side advantages and thwarts valid litigation tactics to achieve immoral agendas that Mrs. Jones supports for invalid reasons. If there are any attorneys who should be disciplined in these matters by Mrs. Jones' team, it is without question Mrs. McKenzie, who (1) filed a frivolous lawsuit on behalf of John Rich against Mr. Sevier for malicious prosecution, when the amount of probable cause showing that he should have not only been arrested by convicted is insurmountable; who (2) went to the media with John Rich and falsely stated that Mr. Sevier and Mr. Ashley demanded money to drop criminal charges they filed; who (3) is guilty of conspiracy to commit attempted bribery, practicing law without a license, intimidation of a witness, and obstruction of justice in relationship to the occurrences on May 22, 2009 involving Mr. Oswald. Mrs. Rogers should be disciplined for knowingly filing a frivolous lawsuit against Mr. Sevier in the Forth Circuit that was entirely void of probably cause. All of the other attorneys named her should be disciplined for their verifiable acts of dishonesty. Instead, the Chief Disciplinarian of the board turns a blind eye to these wrongs and persist to ruthlessly antagonize Mr. Sevier, simply because he is proceeding pro se out of necessity.

<u>VIOLATIONS OF THE FREEDOM OF SPEECH</u>

635. Mr. Sevier and Severe Records refers to and incorporates by reference paragraphs 1 through 634, as though fully set forth herein. Mr. Ramsey, ADA Jackon, ADA Sexton, ADA Welch, Mrs. Jones, Mr. Rich, and Mrs. Hodges acted under color of

law to punish Mr. Sevier and Severe Records as an act of reprisal for reporting Mr. Ramsey and Mrs. McKenzie to the Board and police in 2009 by issuing a frivolous petition.

636. This act of reprisal violated Mr. Sevier and Severe Records constitutional right of free speech under the first amendment.

637. On November 19, 2010, Mr. Rich, Mrs. McKenzie, and Mr. Ramsey violated Mr. Sevier and Severe Records LLC by knowing filing an frivolous lawsuit that was not supported by probable cause for malicious prosecution and abuse of process relating to the three crimes that Mr. Rich was arrested for on May 28, 2009.

638. Mrs. McKenzie, Mr. Ramsey, and Mr. Rich filed the lawsuit merely as an act of reprisal for Mr. Sevier's reporting them to the police on May 29, 2009 for attempting to bribe Mr. Ashley in secret to drop criminal charges controlled by the state.

639. There lawsuit is also a wrongful act of reprisal for Mr. Sevier's reporting Mr. Ramsey and Mrs. McKenzie's repeated acts of misconduct to the Board for knowingly making false statements to the media on May 29, 2009 to taint the jury pools in multiple proceedings.

640. Mrs. McKenzie, Mr. Ramsey, and Mr. Ramsey's lawsuit violates Mr. Sevier's right to report crimes supported by probable cause to the police and misconduct supported by insurmountable evidence to the board without fear of reprisal for whistle blowing.

642. Mr. Sevier and Severe Records has no adequate remedy at law to correct the continuing deprivations of its most cherished constitutional liberties.

643. This is especially true since Mrs. Jones and Mrs. Sexton were inappropriately biased in favor of Mr. Ramsey.

644. As a direct and proximate result of Mr. Rich's coconspirators continuing violations of Mr. Sevier and Severe Records rights, Mr. Sevier and Severe Records have suffered in the past, and will continue to suffer in the future, direct and consequential damages, including but not limited to, the loss of the ability to exercise there constitutional rights.

645. This is no different that Lieutenant Sevier's complaint against Congressman John Mark Windle that is also pending in the Middle District of Tennessee for violations that occurred down range in Iraq with the Tennessee Army National Guard while operating in support of Operation Iraqi Freedom. In that case, Congressman Windle deliberately misused the combat stress Army of the military to stop Lieutenant Sevier from reporting multiple violations to the Inspector General in violation of Lieutenant Sevier's constitutional rights and duties as a Judge Advocate on behalf of his commander at Regimental Fire Support Squadron. The Board tried to use this against Mr. Sevier, he elected to file a suit against Congressman Windle to expose the truth.

646. Wherefore, Mr. Sevier and Severe Records respectfully pray that the Court grant the declaratory and injunctive relief requested herein and award such damages to them as are reasonable, just and necessary.

### PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

647. Mr. Sevier and Severe Records refers to and incorporates by reference paragraphs 1 through 645, as though fully set forth herein Mr. Sevier and Severe Records LLC seek an injunction against Mrs. Jones, Mrs. Hodges, and the Board from going forward this their petition until all matters involving Mr. Sevier, Mrs. McKenzie, Mr. Ramsey, and Mr. Rich are resolved.

648. Mrs. Jones and Mrs. Hodges have deliberately and willfully misused the powers of their office to give Mr. Ramsey and Mrs. McKenzie advantages in civil litigation through knowingly issuing a frivolous ethical petition.

649. These attorney's have actively and repeatedly impeached the integrity of the Nashville Bar, even though they are in charge of maintaining it.

650. Their hypocrisy is insufferable.

651. Mrs. Jones and Mrs. Hodge's deliberately did not investigate into the truthfulness of their peers allegations against Mr. Sevier because of their long standing personal relationship with Mr. Ramsey and attorneys at Neal & Harwell, reducing the justice system to a mere popularity contest at the expense of justice in valid civil proceedings.

652. It was not by mere coincidence that in the fall of 2009, Mr. Ramsey and Mrs. Jones were featured in the Nashville Bar Journal, at a time when Trey Harwell was the President of the Nashville Bar, just as Mr. Ramsey and Mrs. Jones were featured in an article in January 2010 that accused her and the Board of being over aggressive statistically compared to Board's in other states.

653. Mr. Sevier and Severe Records seek an injunction to clamp the mouth of Mrs. McKenzie, Mr. Ramsey, and Mr. Rich from using the frivolous ethics petition or the Board in anyway whatsoever in existing and future civil proceedings.

654. Mr. Sevier and Severe Records ask that this injunction be imposed on all of these individuals in keeping with Rule 9 of the Tennessee Supreme Court, which was been willfully ignored by these individual and is not blue law.

655. Mrs. Jones and Mrs. Hodges knew from April 2009 forward that Mr. Ramsey and Mrs. McKenzie were developing false grounds to use the powers of Mrs. Jone's office to punish Mr. Sevier for reporting them to the police on May 29, 2009 and the Board on June 2, 2009.

656. Mr. Sevier and Severe Records seek an injunction against the Board and District Attorney's from executing another malicious reprisal campaign in response to Mr. Sevier's duty to report wrongdoing and exercise his and Severe Records Constitutional Rights for the benefit of themselves and the artist under their care.

657. Mrs. McKenzie and Mr. Ramsey should be enjoined from representing Mr. Rich in any civil or criminal cases in light of the Rule 1.7 of the Rules of Professional Responsibility.

658. Mrs. McKenzie and Mr. Ramsey should be enjoined and restrained from making false statements to the media.

659. Mr. Rich, Mrs. McKenzie, and Mr. Ramsey should be enjoined and restrained from commissioning third parties, like Mr. Oswald, to secretly bribe witnesses.

660. Mr. Rich should be enjoined and restrained from contacting any foreseeable witnesses or issuing any threats against them for proving testimony that is adverse to his interest.

661. The Tennessee Board of Professional Responsibility should be restrained from considering the current petition. The petition should be transferred to state Board in a third party state for independent review so that it can be better determined if Mrs. Jones and Mrs. Hodges were merely acting as bullies, against a new lawyer, who has zero desire to be part of their social circles.

662. Just as Mr. Sevier has been enjoined from handling legal aid cases for the military because of an pending complaint, Mrs. Jones and Mrs. Hodges should be temporarily enjoined from handling any cases with the Board until this case is resolved.

663. Likewise, ADA Sexton and ADA Welch, not ADA Jackson, should also be enjoined from prosecuting any cases until these matters are resolved.

664. It is not by mere coincidence that the new record Mr. Sevier will release though his band American Propaganda on September 11, 2011 is entitled "Reprisal." Accordingly, Mr. Sevier asks that his confidence be restored in the justice system:

PRAYER FOR RELIEF:

WHEREFORE: Mr. Sevier and Severe Records pray for the following:

1. that they be awarded judgment on the complaint;

2. that this case be consolidated with the law suit Country Singer John D. Rich filed against Mr. Sevier, 3:11-cv-00362, which is pending before the Honorable Judge Campbell, who has original jurisdiction over these matters;

3. that a jury of twelve be impaneled to try this cause;

4. that Mr. Rich's frivolous complaint for malicious prosecution be stricken and adequate deterrents imposed to keep this kind of repeated abuse from occurring;

5. that Mr. Sevier and Severe Records be awarded a judgment under all counts for both compensatory and punitive damages in an amount sufficient to compensate him in accordance with the law for their damages as set forth above;

6. that Mr. Sevier and Severe Records be awarded pre-judgment and post-judgment interests;

7. that, respectfully, the case not be assigned to the Honorable Judge Haynes because there are other matters being litigated before him that might undermine fairness in this controversial case;